# BROWDER *v.* DIRECTOR, DEPARTMENT OF CORRECTIONS OF ILLINOIS

No. 76–5325.   Argued October 31, 1977—Decided January 10, 1978

*Kenneth N. Flaxman* argued the cause for petitioner. With him on the briefs were *John M. Kalnins, Thomas R. Meites,* and *Frederick H. Weisberg.*

*Raymond McKoski,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief were *William J. Scott,* Attorney General, and *Donald B. Mackay* and *Melbourne A. Noel, Jr.,* Assistant Attorneys General.*

MR. JUSTICE POWELL delivered the opinion of the Court.

This case requires us to decide whether the Court of Appeals lacked jurisdiction to review an order directing petitioner's discharge from respondent's custody because respondent's appeal was untimely. In order to resolve this question, we must consider the applicability of Federal Rules of Civil Procedure 52 (b) and 59 in habeas corpus proceedings. Because we conclude that the Court of Appeals lacked jurisdiction, we reverse.[1]

---

*David Goldberger* and *Joel Gora* filed a brief for the American Civil Liberties Union as *amicus curiae* urging reversal.

*Howard Eglit* filed a brief for the Chicago Council of Lawyers as *amicus curiae.*

[1] In light of this disposition, it is unnecessary to reach any of the other questions presented. In addition to his jurisdictional point, petitioner contended that the Court of Appeals erred in finding the facts *de novo* on the issue of probable cause and in concluding that petitioner's

## I

On January 29, 1971, a teenage girl reported to Chicago police that she had been raped. She gave a physical description of her assailants to one officer and told another officer that one of her attackers was named "Browder," was about 17 years old, and lived in the 4000 block of West Monroe. On the basis of this information and further investigation, the police focused on petitioner's brother, Tyrone Browder, whose name was in the files of the Youth Division of the Chicago Police Department. A telephone conversation between a Youth Division officer and Mrs. Lucille Browder shifted the officers' suspicions from Tyrone to petitioner, and Mrs. Browder agreed to keep both her sons at home until the police arrived to talk to them. Four officers interviewed petitioner and his brother, both of whom denied knowledge of the rape. The officers arrested the brothers along with two other teenage Negro males who were present at the Browder home. The four arrestees were taken to the police station, where another officer noticed that petitioner fit the description of the assailant in a rape that had taken place on January 30. In separate lineups, each complainant identified petitioner as her assailant. After being informed of his rights as required by *Miranda* v. *Arizona,* 384 U. S. 436 (1966), petitioner confessed

---

arrest was lawful. On the latter point, petitioner maintained that the arrest of four youths in the Browder home violated the Fourth and Fourteenth Amendments' requirement of probable cause, *Davis* v. *Mississippi,* 394 U. S. 721 (1969), and, even assuming the existence of probable cause, that the Fourth and Fourteenth Amendments required the police to obtain an arrest warrant before entering the Browder home to make the arrests. The parties also have disputed whether litigation of petitioner's Fourth Amendment claim on federal habeas corpus was barred either by *Wainwright* v. *Sykes,* 433 U. S. 72 (1977), or by *Stone* v. *Powell,* 428 U. S. 465 (1976). Finally, petitioner questioned the validity of the Seventh Circuit's "unpublished opinion" rule. We leave these questions to another day.

to the second rape but denied having committed the rape on January 29.

At his trial for the January 30 rape, petitioner moved unsuccessfully to suppress the lineup identification and the confession on grounds unrelated to the lawfulness of his arrest, which petitioner did not challenge. On direct appeal, however, petitioner argued that the identification and confession were the fruits of an unlawful arrest, effected without probable cause and without a warrant. The Illinois intermediate appellate court invoked its contemporaneous-objection rule and held that petitioner had waived this claim. Petitioner's efforts to obtain review of this claim on direct appeal to the Illinois Supreme Court and on state collateral attack fared no better.

Petitioner met with success at last when he petitioned for a writ of habeas corpus in Federal District Court. On October 21, 1975, the District Court issued an opinion and order directing that petitioner be released from custody unless the State retried him within 60 days. The court did not hold an evidentiary hearing, but it found on the basis of the petition, the respondent's "motion to dismiss,"[2] and the state-court record that the police lacked probable cause to arrest petitioner on the evening of January 31, 1971. Unable to conclude that the taint of the unlawful arrest had been dissipated when the identification and confession were obtained, the court held that both were inadmissible.[3]

On November 18, or 28 days after entry of the District

---

[2] Respondent moved to dismiss the habeas corpus petition for "failure to state a claim upon which relief may be granted, pursuant to Rule 12 (b) (6) of the Federal Rules of Civil Procedure." Respondent did not base his "motion to dismiss" solely on petitioner's waiver of his claim of unlawful arrest; respondent also addressed the merits of the Fourth Amendment claim.

[3] The District Court held that petitioner's failure to raise the issue at trial did not bar habeas corpus relief because it found, citing *Fay* v. *Noia,* 372 U. S. 391 (1963), that the failure was not the result of a deliberate tactical decision to forgo the claim.

Court's order, respondent filed with the District Court a motion "to Further Stay the Execution of the Writ of Habeas Corpus and to Conduct an Evidentiary Hearing." Respondent submitted that the state-court record was inadequate and that the District Court had "erred in granting the writ without first conducting an evidentiary hearing to determine if in fact petitioner was arrested without probable cause and if so, whether his confession was thereby tainted." App. 118. Respondent cited *Townsend* v. *Sain,* 372 U. S. 293 (1963), and *United States ex rel. McNair* v. *New Jersey,* 492 F. 2d 1307 (CA3 1974), as authority for his asserted right to an evidentiary hearing, but did not identify the source of the court's authority to consider the motion.

The District Court nevertheless entertained the motion, granted a stay of execution on December 8, and on December 12 set a date for an evidentiary hearing on the issue of probable cause. The court noted that the inadequacy of the state-trial record had not been raised in respondent's "motion to dismiss" but concluded "that the request for an evidentiary hearing should not be denied solely because it is untimely." [4] App. 120. Petitioner moved immediately to vacate the orders granting a stay and an evidentiary hearing on the ground that the court lacked jurisdiction to enter them. Petitioner explained that because the period of time prescribed by the Federal Rules of Civil Procedure for a motion for a new trial or to alter or amend a judgment had elapsed,[5] the District

[4] By untimeliness the District Court apparently meant respondent's failure to request an evidentiary hearing prior to the court's ruling on October 21. The court made no mention of the Federal Rules of Civil Procedure. The untimeliness of respondent's motion under those Rules was first mentioned in petitioner's motion to vacate the orders granting a stay and setting a date for an evidentiary hearing.

[5] A motion for a new trial may be made under Rule 59 (a). Rule 59 (b) provides that such a motion "shall be served not later than 10 days after the entry of the judgment." Similarly, "[u]pon motion of a party made not later than 10 days after entry of judgment the court may amend its

Court "no longer ha[d] jurisdiction to alter or amend its final order of October 21, 1975, and the orders whose vacatur is sought are void orders." *Id.*, at 122.[6]

The evidentiary hearing was held nevertheless on January 7, 1976, and on January 26, 1976, the District Court ruled: "[T]he writ of habeas corpus was properly issued on October 21, 1975. The motion to reconsider is therefore DENIED." *Id.*, at 161. Respondent immediately filed a notice of appeal seeking review of the order of October 21 as well as the order of January 26. Petitioner maintained, consistently, that the Court of Appeals lacked jurisdiction to review the original order granting relief, since respondent's notice of appeal was not filed within 30 days of that order, and the time for appeal had not been tolled by respondent's untimely post-judgment

---

findings or make additional findings and may amend the judgment accordingly." Rule 52 (b). Under Rule 59 (e), "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Since respondent neglected to label his motion, it is impossible to tell whether the motion was based on Rule 59 (a), Rule 52 (b), or Rule 59 (e). Rule 6 (b) prohibits enlargement of the time period prescribed in all of these Rules.

Because all three Rules contain the same 10-day time limit, it is unnecessary for purposes of this decision to determine whether respondent's motion should be considered a motion for a new trial, a motion to amend or make additional findings, or a motion to alter or amend the judgment. We shall refer to the motion as one for rehearing or reconsideration, for such was the essence of the relief requested. See generally *United States* v. *Dieter*, 429 U. S. 6, 8–9 (1976).

[6] Petitioner acknowledged that under Rule 60 (b), which provides for relief from judgment under certain enumerated circumstances, "a court may modify a final order granting habeas relief after the ten day limit of Rules 52 and 59"; but petitioner argued that respondent's motion was "insufficient" under Rule 60 (b). This asserted insufficiency was twofold: The motion was not made within a "reasonable time," as required by the Rule; more significantly, it did not contain allegations that would qualify for relief under any of the Rule's six categories. Respondent merely sought to convince the court that it had erred in granting relief without holding an evidentiary hearing; respondent's purpose was to introduce additional, not newly discovered, evidence.

motion. See n. 5, *supra*. Even if the order of January 26 were construed as a denial of relief from judgment under Fed. Rule Civ. Proc. 60 (b), as to which the appeal would have been timely, petitioner argued that the Court of Appeals would have jurisdiction only to review that order for abuse of discretion.[7] Respondent disclaimed reliance on Rule 60 (b), insisting instead that the order of October 21 was not a final order and that a timely appeal had been taken from the final order of January 26.[8]

---

[7] Rule 60 (b), unlike Rules 52 (b) and 59, does not contain a 10-day time limit. A motion for relief from judgment under Rule 60 (b), however, does not toll the time for appeal from, or affect the finality of, the original judgment. See 7 J. Moore, Federal Practice ¶ 60.29, pp. 413–414 (1975). Thus, while the District Court lost jurisdiction 10 days after entry of the October 21 judgment to grant relief under Rule 52 (b) or 59, its power to grant relief from judgment under Rule 60 (b) still existed on January 26. A timely appeal may be taken under Fed. Rule App. Proc. 4 (a) from a ruling on a Rule 60 (b) motion. The Court of Appeals may review the ruling only for abuse of discretion, however, and an appeal from denial of Rule 60 (b) relief does not bring up the underlying judgment for review. See *Daily Mirror, Inc.* v. *New York News, Inc.*, 533 F. 2d 53 (CA2), cert. denied, 429 U. S. 862 (1976); *Brennan* v. *Midwestern United Life Ins. Co.*, 450 F. 2d 999 (CA7 1971), cert. denied, 405 U. S. 921 (1972); 7 J. Moore, Federal Practice ¶ 60.19, p. 231; ¶ 60.30 [3], pp. 430–431 (1975).

[8] Respondent has insisted throughout this litigation that his motion for an evidentiary hearing was not based on Rule 60 (b). This position derives in part from respondent's consistently held view that until January 26, 1976, there was no final judgment from which relief could be sought or obtained, and in part from his view that the Federal Rules of Civil Procedure are not applicable in habeas corpus proceedings. It may be that respondent desired as well to avoid the force of petitioner's arguments as to the limited scope of appellate review of a district court's disposition of a Rule 60 (b) motion. See n. 7, *supra*. In any event, since respondent has represented to the Court of Appeals and to this Court that his motion was not based on Rule 60 (b), and since the District Court did not construe it as such, we find it unnecessary to address the question whether the decision of the Court of Appeals could be sustained on the theory that despite the absence of any reference to Rule 60 (b) or any of its speci-

The Court of Appeals did not address the question of its appellate jurisdiction except to observe, in a cryptic footnote, that it did not have to consider "whether there was an untimely appeal" on the issue whether petitioner's confession was admissible under *Brown* v. *Illinois*, 422 U. S. 590 (1975). The court reversed the District Court without a published opinion, holding that the police had had probable cause to arrest petitioner. Judgt. order reported at 534 F. 2d 331 (CA7 1976). Rehearing was denied. We granted certiorari. 429 U. S. 1072 (1977).

II

Under Fed. Rule App. Proc. 4 (a) and 28 U. S. C. § 2107, a notice of appeal in a civil case must be filed within 30 days of entry of the judgment or order from which the appeal is taken. This 30-day time limit is "mandatory and jurisdictional." *United States* v. *Robinson,* 361 U. S. 220, 229 (1960). See also *Fallen* v. *United States,* 378 U. S. 139 (1964); *Coppedge* v. *United States,* 369 U. S. 438, 442 (1962); *United States* v. *Schaefer Brewing Co.,* 356 U. S. 227 (1958); *Matton Steamboat Co.* v. *Murphy,* 319 U. S. 412, 415 (1943); *George* v. *Victor Talking Mach. Co.,* 293 U. S. 377, 379 (1934). The purpose of the rule is clear: It is "to set a definite point of time when litigation shall be at an end, unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands. Any other construction of the statute would defeat its purpose." *Matton Steamboat, supra,* at 415.

The running of time for filing a notice of appeal may be tolled, according to the terms of Rule 4 (a), by a timely motion filed in the district court pursuant to Rule 52 (b) or Rule 59. Respondent's motion for a stay and an evidentiary hearing was filed 28 days after the District Court's order directing that petitioner be discharged. It was untimely

---

fied grounds, the action of the District Court was reversible as an improper denial of relief under that Rule.

under the Civil Rules, see n. 5, *supra,* and therefore could not toll the running of time to appeal under Rule 4 (a). The Court of Appeals therefore lacked jurisdiction to review the order of October 21. But respondent answers that Rules 52 (b) and 59 do not apply because the order of October 21 was not final and, in any event, the Federal Rules of Civil Procedure did not apply in this habeas corpus proceeding.[9] We consider each of these contentions.

## A

An appeal in a habeas corpus proceeding lies from a "final order," 28 U. S. C. § 2253. The District Court's order of October 21 purported to be final, as it granted petitioner's application for a writ of habeas corpus and directed that petitioner be discharged if the State did not retry him within 60 days. Respondent contends, however, that this order was not a final order " 'leaving nothing to be done but to enforce by execution what had been determined,' *Catlin* v. *United States,* 324 U. S. 229, 236 (1945), because all required procedures under the Habeas Corpus Act had not been completed at the time the order was issued." Brief for Respondent 42. Respondent cites 28 U. S. C. §§ 2243 and 2254 (d) and the Court's decision in *Townsend* v. *Sain,* 372 U. S. 293 (1963), in support of his contention that the October 21 order "cannot be considered a final order under 28 U. S. C. [§] 2253 because it left unresolved the statutorily prescribed question of whether

---

[9] Rule 11 of the new Federal Rules Governing 28 U. S. C. § 2254 Cases provides:

"The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."

The new Rules are applicable to cases commenced on or after February 1, 1977. They have no bearing on the instant case, which was commenced on January 8, 1975.

It is undisputed that Fed. Rule App. Proc. 4 (a) is applicable to habeas corpus proceedings. See Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1192, and n. 262 (1970)).

an evidentiary hearing would be required . . . ." Brief for Respondent 43.

Respondent's position confuses error with nonfinality and fails to distinguish between the requirements of the habeas corpus statutes and the procedural means for correcting asserted error in fulfilling the statutory command. Here the District Court discharged its duty "summarily [to] hear and determine the facts," 28 U. S. C. § 2243, by granting the petition on the state-court record. See *Walker* v. *Johnston,* 312 U. S. 275, 284 (1941).[10] Respondent's failure to assert the need for an evidentiary hearing in his motion to dismiss did not necessarily deprive him of the right to assert the absence of a hearing as a reason for reconsideration [11] or as error on appeal,[12] but neither did the absence of an evidentiary hearing render the District Court order nonfinal. If respondent

---

[10] The Court stated in *Walker* v. *Johnston* that there could be situations where "on the facts admitted, it may appear that, as matter of law, the prisoner is entitled to the writ and to a discharge." 312 U. S., at 284. Several Courts of Appeals have acknowledged the power of a federal district court to discharge a habeas corpus petitioner from state custody without conducting an evidentiary hearing, when the facts are undisputed and establish a denial of petitioner's constitutional rights. *E. g., Gladden* v. *Gidley,* 337 F. 2d 575, 578 (CA9 1964) (dictum); *United States ex rel. Meers* v. *Wilkins,* 326 F. 2d 135, 140 (CA2 1964) (Marshall, J.); *Dorsey* v. *Gill,* 80 U. S. App. D. C. 9, 18, 148 F. 2d 857, 866, cert. denied, 325 U. S. 890 (1945). We express no view on whether or not the District Court erred in not conducting an evidentiary hearing before issuing its order directing petitioner's conditional discharge.

[11] See, *e. g., Gladden, supra; Hunter* v. *Thomas,* 173 F. 2d 810 (CA10 1949).

[12] See, *e. g., United States ex rel. McNair* v. *New Jersey,* 492 F. 2d 1307 (CA3 1974); *United States ex rel. Mitchell* v. *Follette,* 358 F. 2d 922 (CA2 1966); *Gladden, supra.* The better procedure, of course, would be for the custodian "to indicate, in any submission asking dismissal as a matter of law, the proceedings to which it deems itself entitled if its request should be denied." *Mitchell, supra,* at 929. See also *McNair, supra,* at 1309; *Gladden, supra,* at 578.

were correct in his theory of finality, any order later alleged to have been entered precipitately or after an incomplete hearing could be considered nonfinal for purposes of appeal. The confusion that would result from litigants' divergent views of the completeness of proceedings would be wholly at odds with the imperative that jurisdictional requirements be explicit and unambiguous.

B

Since the order of October 21 was a final order, the time for appeal commenced to run on that date. Respondent's notice of appeal therefore was untimely by 68 days, unless respondent's motion of November 18 tolled the time for appeal under Rule 4 (a). The rationale behind the tolling principle of the Rule is the same as in traditional practice: "A *timely* petition for rehearing tolls the running of the [appeal] period because it operates to suspend the finality of the . . . court's judgment, pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties." *Department of Banking* v. *Pink,* 317 U. S. 264, 266 (1942) (emphasis supplied). An untimely request for rehearing does not have the same effect. Respondent seeks to avoid the conclusion that his motion was untimely under the Civil Rules, and therefore did not toll the time for appeal under Appellate Rule 4 (a), by asserting that his motion was not based on Rule 52 (b) or Rule 59 because the Federal Rules of Civil Procedure were not applicable in this habeas proceeding.

Respondent's failure to rely on a particular rule in making his motion does not suffice to make the Federal Rules inapplicable. Respondent's insistence that his motion was not based on any of the Federal Rules, but rather on the habeas corpus statutes and *Townsend* v. *Sain, supra,* parallels his theory of the nonfinality of the October 21 order and reflects his failure to recognize that the habeas corpus statutes do not prescribe postjudgment procedures. During the pendency of

a habeas proceeding, the procedure indeed is set out in the habeas corpus statutes, and Fed. Rule Civ. Proc. 81 (a)(2) recognizes the supremacy of the statutory procedures over the Federal Rules. But those procedures say nothing about the proper method for obtaining the correction of asserted errors after judgment, whether on appeal or in the District Court.

Respondent asserts that his motion of November 18 was timely because it was filed within the 30-day period allowed for appeal, as was the case in *United States* v. *Dieter,* 429 U. S. 6 (1976). In relying upon *Dieter,* respondent misconceives our holding in that case. There the Court followed *United States* v. *Healy,* 376 U. S. 75 (1964), and held that a timely motion for rehearing in a criminal case would toll the running of the time for appeal. In *Dieter,* as in *Healy,* no rule governed the timeliness of a motion for rehearing by the Government in a criminal case or the effect of such a motion on the time allowed for appeal. Instead, " 'traditional and virtually unquestioned practice' " dictated that a timely petition for rehearing would render the original judgment nonfinal for purposes of appeal and therefore would toll the time for appeal, *Dieter, supra,* at 8, and n. 3 (quoting *Healy, supra,* at 79); and absent a rule specifying a different time limit, a petition for rehearing in a criminal case would be considered timely "when filed within the original period for review," 376 U. S., at 78. In a civil case, however, the timeliness of a motion for rehearing or reconsideration is governed by Rule 52 (b) or Rule 59, each of which allows only 10 days; [13] and

---

[13] Respondent's contention that the "traditional and virtually unquestioned practice" in habeas corpus proceedings contemplates an evidentiary hearing in cases like this one misunderstands the import of *Dieter* and *Healy.* The Court's resort to traditional practice in those cases was predicated explicitly on the absence of a relevant statute or rule governing the tolling of the time to appeal. It had nothing to do with the practice or procedure of the underlying criminal trial. Where, as here, a rule governs the procedure in question, the problem addressed in *Dieter* and *Healy* is absent.

Rule 4 (a) follows the "traditional and virtually unquestioned practice" in requiring that a motion be timely if it is to toll the time for appeal.

Respondent has maintained throughout that the Federal Rules of Civil Procedure are wholly inapplicable on habeas.[14] We think this is a mistaken assumption. It is well settled that habeas corpus is a civil proceeding. *Fisher* v. *Baker,* 203 U. S. 174, 181 (1906); *Ex parte Tom Tong,* 108 U. S. 556 (1883); see *Heflin* v. *United States,* 358 U. S. 415, 418 n. 7 (1959). Perhaps in recognition of the differences between general civil litigation and habeas corpus proceedings, see *Harris* v. *Nelson,* 394 U. S. 286, 293–294, and n. 4 (1969), the Federal Rules of Civil Procedure apply in habeas proceedings only "to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions." Fed. Rule Civ. Proc. 81 (a)(2); see Fed. Rule Civ. Proc. 1.

In *Harris* the Court considered whether the discovery procedure authorized by Fed. Rule Civ. Proc. 33 is available in a habeas corpus proceeding. The Court concluded "that the intended scope of the Federal Rules of Civil Procedure and the history of habeas corpus procedure . . . make it clear that

---

[14] Respondent did assume, however, that Rule 12 (b)(6) is applicable; he denominated his original response to the habeas petition a "motion to dismiss" explicitly based on that Rule. See n. 2, *supra.* Respondent's conception—which lies at the heart of his view that the lack of an evidentiary hearing rendered the order of October 21 nonfinal—seems to have been that a Rule 12 (b)(6) motion is an appropriate motion in a habeas corpus proceeding, and that upon denial of such a motion, the case should proceed through answer, discovery, and trial. This view is erroneous. See *Preiser* v. *Rodriguez,* 411 U. S. 475, 496 (1973). The custodian's response to a habeas corpus petition is not like a motion to dismiss. The procedure for responding to the application for a writ of habeas corpus, unlike the procedure for seeking correction of a judgment, is set forth in the habeas corpus statutes and, under Rule 81 (a)(2), takes precedence over the Federal Rules.

Rule 81 (a)(2) must be read to exclude the application of Rule 33 in habeas corpus proceedings." 394 U. S., at 293. In *Thompson* v. *INS*, 375 U. S. 384 (1964), on the other hand, the Court assumed without discussion that Rules 52 (b) and 59 applied in a "proceeding for admission to citizenship" in which, as in a habeas corpus proceeding, the applicability of the Civil Rules is qualified by Rule 81 (a)(2).

Although this Court has not had occasion to hold Rules 52 (b) and 59 applicable in habeas corpus proceedings, the Courts of Appeals uniformly have so held or assumed. *E. g.*, *Rothman* v. *United States*, 508 F. 2d 648, 651 (CA3 1975); *Hunter* v. *Thomas*, 173 F. 2d 810 (CA10 1949) (motion for a new trial by the custodian). The combined application of the time limit in Rule 52 (b) or 59 and the tolling principle of Rule 4 (a) or its predecessor, Fed. Rule Civ. Proc. 73 (a), has resulted in dismissal of appeals from dispositions on habeas corpus petitions. *E. g.*, *Flint* v. *Howard*, 464 F. 2d 1084, 1086 (CA1 1972). See also *Fitzsimmons* v. *Yeager*, 391 F. 2d 849 (CA3) (en banc), cert. denied, 393 U. S. 868 (1968); *Munich* v. *United States*, 330 F. 2d 774 (CA9 1964).

We see no reason to hold to the contrary. No other statute of the United States is addressed to the timeliness of a motion to reconsider the grant or denial of habeas corpus relief, and the practice in habeas corpus proceedings before the advent of the Federal Rules of Civil Procedure conformed to the practice in other civil proceedings with respect to the correction or reopening of a judgment. At common law, a court had the power to alter or amend its own judgments during, but not after, the term of court in which the original judgment was rendered, *United States* v. *Mayer*, 235 U. S. 55, 67 (1914); *Bronson* v. *Schulten*, 104 U. S. 410, 415 (1882); *Ex parte Lange*, 18 Wall. 163, 167 (1874); *Basset* v. *United States*, 9 Wall. 38, 41 (1870); and this rule was applied in habeas corpus cases, see *Aderhold* v. *Murphy*, 103 F. 2d 492 (CA10

1939); *Tiberg* v. *Warren*, 192 F. 458, 463 (CA9 1911). The 1946 amendments to the Rules of Civil Procedure abolished terms of court and instead confined the power of a district court to alter or amend a final order to the time period stated in Rules 52 (b) and 59. See Advisory Committee Report, 5 F. R. D. 483, 486–487 (1946). "The Rules, in abolishing the term rule, did not substitute indefiniteness. On the contrary, precise times, independent of the term, were prescribed." *United States* v. *Smith*, 331 U. S. 469, 473 n. 2 (1947) (referring to the time limit prescribed by the Federal Rules of Criminal Procedure for new trial motions).

In addition to the settled conformity of habeas corpus and other civil proceedings with respect to time limits on post-judgment relief, the emphasis in the Federal Rules of Civil Procedure on "just" and "speedy" adjudication, see Fed. Rule Civ. Proc. 1, parallels the ideal of "a swift, flexible, and summary determination" of a habeas corpus petitioner's claim. *Preiser* v. *Rodriguez*, 411 U. S. 475, 495 (1973). See also *Fay* v. *Noia*, 372 U. S. 391, 401–402 (1963); *United States ex rel. Mattox* v. *Scott*, 507 F. 2d 919, 923 (CA7 1974); *Wallace* v. *Heinze*, 351 F. 2d 39, 40 (CA9 1965), cert. denied, 384 U. S. 954 (1966). Rule 59 in particular is based on an "interest in speedy disposition and finality," *Silk* v. *Sandoval*, 435 F. 2d 1266, 1268 (CA1), cert. denied, 402 U. S. 1012 (1971). Although some aspects of the Federal Rules of Civil Procedure may be inappropriate for habeas proceedings, see *Harris* v. *Nelson, supra; Preiser, supra,* at 495–496, the requirement of a prompt motion for reconsideration is well suited to the "special problems and character of such proceedings." *Harris* v. *Nelson, supra,* at 296. Application of the strict time limits of Rules 52 (b) and 59 to motions for reconsideration of rulings on habeas corpus petitions, then, is thoroughly consistent with the spirit of the habeas corpus statutes.

Because respondent failed to comply with these "mandatory

and jurisdictional" time limits, the judgment of the Court of Appeals must be

<em>Reversed.</em>

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE REHN-QUIST joins, concurring.

I join the Court's opinion but add the comment that, under slightly altered circumstances, respondent's position might be sustained under Fed. Rule Civ. Proc. 60 (b)(1) or (6). This would be done by treating the District Court's December 8, 1975, order as an order granting relief from judgment and the post-evidentiary-hearing order dated January 26, 1976, and entered January 28, as an order reinstating judgment. With a judgment thus newly entered, respondent's notice of appeal would have been timely under Fed. Rule App. Proc. 4 (a) when it was filed on January 27. See *Edwards* v. *Louisiana,* 520 F. 2d 321 (CA5 1975), cert. denied, 423 U. S. 1089 (1976).

I would not decline to treat the matter under Rule 60 (b) merely because respondent did not *label* his initial motion for a new evidentiary hearing as a "Rule 60 (b) motion," for that would exalt nomenclature over substance. 7 J. Moore, Federal Practice ¶ 60.42, p. 903 (1975) ("[M]islabelled moving papers may be treated as a motion under 60 (b), in the absence of prejudice"). Certainly petitioner recognized in the District Court that Rule 60 (b) might provide a basis for the December 8 order; petitioner moved there unsuccessfully to vacate the order on the ground that respondent's motion did not satisfy the "reasonable time" standard or meet the substantive categories of Rule 60 (b). Petitioner's Memorandum of Law in Support of Motion to Vacate in No. 75 C 69 (ND Ill.), pp. 2–3; Brief for Petitioner in No. 76–1089 (CA7), p. 13.

The District Judge's actions, in denominating his December 8 order as one granting respondent's "motion for stay of execution of writ" and his January 28 order as one denying respondent's "motion to reconsider," are more of an obstacle.

The District Judge, though noting that respondent's motion was "untimely" (App. 120), evidently intended to permit re-examination of the issue of probable cause in light of the evidence to be presented by the State at the hearing set for January 1976. An obvious way for the District Court to permit such further examination was, of course, to set aside the original October 21 judgment under Rule 60 (b). Though the District Court made no explicit finding that the standards of Rule 60 (b)(1) or (6) were satisfied, it did deny *sub silentio* petitioner's motion disputing the applicability of those subsections. Arguably the District Judge might not have intended to set aside the October 21 judgment until and unless the January hearing turned up evidence mandating a change in the grant of habeas. But where, as here, the District Judge acted on respondent's motion to conduct an evidentiary hearing within 48 days of the original judgment—when the possibility of granting a retroactive 30-day extension of time for taking an appeal was still open—a Court of Appeals would properly be reluctant to interpret the District Judge's ambiguous succession of orders as intending to preclude full appellate review of his habeas corpus determination. Were I sitting in review on the Court of Appeals, I might well have chosen to treat the December 8 order as one granting relief from judgment.

The difficulty with effecting any such rescue of the Court of Appeals' jurisdiction over the appeal from the January 28 order, is that respondent has strenuously resisted the aid. Respondent, evidently fearing that the January 28 order would be treated as an order declining to set aside judgment under Rule 60 (b)—rather than as an order re-entering judgment which already had been set aside on December 8 under Rule 60 (b)—and fearing that the scope of review thus would be limited to determining whether there was abuse of discretion, urged in his reply brief in the Court of Appeals, p. 3, that "[i]n point of fact respondent's motion was not filed under Rule 60, but filed pursuant to . . . 28 U. S. C. [§] 2254 and

*Townsend* v. *Sain,* 372 U. S. 293 (1963), as is clear from the fac[e] of the motion." And to deepen the difficulty, respondent added: "Indeed it is doubtful whether Rule 60 even applies in habeas cases." *Id.,* at 4 n. 1. Even in this Court, respondent has disavowed any reliance on Rule 60 (b), evidently preferring to bank on the possibility that the Federal Rules of Civil Procedure governing timeliness would be found not to apply in federal habeas proceedings. Brief in Opposition 7; Tr. of Oral Arg. 33–34. Under these circumstances, I see no obligation on this Court's part to attempt to rescue respondent's case on a Rule 60 (b) basis.