In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 15-1036

TIMOTHY BELL,

*Plaintiff-Appellant*,

*v.*

EUGENE MCADORY, *et al.*,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 12-3138-CSB-DGB — **Colin S. Bruce**, *Judge*.

———————————

ARGUED JANUARY 21, 2016 — DECIDED APRIL 29, 2016

———————————

Before POSNER, EASTERBROOK, and KANNE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In 2006 Timothy Bell was adjudicated to be a sexually dangerous person and civilly detained under Illinois law. He was sent to the Treatment and Detention Facility in Rushville but did not stay there long. After he violently attacked a guard, he was convicted and spent the next four years in prison. When his sentence ex-

pired in 2010, he was sent back to Rushville and did not like the transfer one bit.

Bell took the position that he was entitled to release from custody and declined to cooperate with Rushville's intake procedures. He refused to answer questions. He refused to be photographed. He threatened the guards, who understandably took the threats seriously. Housed in segregation, he put paper over the windows to block monitoring and otherwise tried to frustrate the Facility's normal operation.

After the impasse had continued for 20 days, Eugene McAdory, Rushville's Security Director, told the guards to take Bell to a secure room in the infirmary, which had larger windows, and to take away his clothing. Bell refused to cooperate with the transfer, which as a result entailed some use of force. He spent the next eight days naked in the infirmary—and, he says, uncomfortably cold, because the air conditioning was on and he lacked protection from the draft. On the ninth day Bell agreed to cooperate with Rushville's intake procedure. He was given clothes and moved to the general population. He filed this suit under 42 U.S.C. §1983, contending that the eight cold, uncomfortable, unclothed days, meted out without a hearing, violated the Due Process Clause of the Constitution's Fourteenth Amendment.

The district court granted summary judgment to all defendants, concluding that Bell had no constitutional right to comfort, clothes, or a hearing. 2014 U.S. Dist. LEXIS 110337 (C.D. Ill. Aug. 11, 2014). The court observed that "routine discomfort is part of the penalty" for crime, quoting from *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and that if prison conditions are "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses

against society", quoting from *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The terms of Bell's confinement therefore did not violate the Cruel and Unusual Punishments Clause of the Eighth Amendment, the court concluded. See 2014 U.S. Dist. LEXIS 110337 at *7–15.

There's an obvious problem with this reasoning. Bell invoked the Due Process Clause, not the Cruel and Unusual Punishments Clause. He did that because he is a civil detainee, not a prisoner. States must treat detainees at least as well as prisoners, and often they must treat detainees better—precisely because detainees (whether civil or pretrial criminal) have *not* been convicted and therefore must not be punished. See, e.g., *Bell v. Wolfish*, 441 U.S. 520 (1979). So to say that harsh conditions are proper as part of the penalty for crime is not remotely to justify Bell's treatment.

Indeed, it is far from clear that spending eight days without clothes in a fan-blown stream of chilled air would be proper for a convicted prisoner, when the goal was to get the prisoner to pose for a photograph. Since Bell had been detained at Rushville before, it is unclear why he had to go through the intake process again—though it is understandable that he be cooped up while he was threatening violence against the staff.

But after the district court erred by equating civil detainees to convicted prisoners, Bell made a blunder of his own. He did not file a timely appeal. And *that* blunder is potentially conclusive, because the time to appeal in civil litigation sets a limit on appellate jurisdiction. *Bowles v. Russell*, 551 U.S. 205 (2007).

The district court entered its judgment on August 11, 2014, giving Bell until September 10 to file a notice of appeal. See 28 U.S.C. §2107(a); Fed. R. App. P. 4(a)(1)(A). In lieu of a notice of appeal, Bell might have sought reconsideration; he had 28 days (until September 8) to file such a motion. Fed. R. Civ. P. 59(e). He did not meet either deadline. Instead, on September 11, he filed a motion that the district judge treated as one under Fed. R. Civ. P. 60(b). A motion filed within 28 days of the judgment suspends the judgment's finality and defers the time for appeal. Fed. R. App. P. 4(a)(4). But a motion filed after 28 days does not affect the time for appeal. So Bell's time expired on September 10.

The disposition of a motion under Rule 60 is separately appealable. The district judge denied Bell's motion on October 1, and *again* Bell did not file a proper notice of appeal. He did file a flurry of other papers, however, and this court eventually held that a document he had filed on October 16 contained the information required by Fed. R. App. P. 3(c) and should be treated as a notice of appeal. See *Smith v. Barry*, 502 U.S. 244 (1992). This gives us appellate jurisdiction. But it is canonical that an appeal from the denial of a motion under Rule 60(b) does not allow the court of appeals to address the propriety of the original judgment, for that would be equivalent to accepting a jurisdictionally untimely appeal. See *Browder v. Director, Department of Corrections*, 434 U.S. 257, 263 n.7 (1978) ("an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review").

Bell offers excuses for his failure to appeal on time. He contends, for example, that he thought that the 28- and 30-day periods began to run only when he received the court's judgment (which he says happened on August 15)—and he

did file his motion within 28 days of the judgment's receipt. But there is no ambiguity in the statute or rules, and at all events *Bowles* held that there can be no equitable exceptions to the time for appeal. 551 U.S. at 213–14. That's what it means to call the time limit jurisdictional. Excuses and misunderstandings can extend many a time limit, see *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015) (collecting authority), but they have no effect on jurisdictional limits.

Assisted by able counsel, Bell sees two ways around this problem. First, he contends that Fed. R. Civ. P. 60(b)(1) should be treated differently from Rule 60(b)(6), the subsection involved in *Browder* and similar decisions. Second, he maintains that the district judge himself effectively reopened the time for appeal by writing, in the brief order denying the Rule 60 motion, that the original judgment was correct. Since he is entitled to appeal from the denial of the Rule 60 motion, Bell maintains, he is equally entitled to litigate whether the original judgment was right.

Both varieties of this argument have the same problem: They would effectively override *Bowles* and *Browder* and allow belated appeals by anyone who files under Rule 60(b). Judges routinely say when denying Rule 60 motions that they do not see an error in the initial judgment. Bell has not cited, and we could not find, any decision from the Supreme Court or any court of appeals holding that, by contesting the merits of the judgment in a Rule 60 motion, a litigant gets a second crack at appeal. Instead we find many decisions saying that disagreement with the merits of the underlying judgment simply is not a reason for relief under Rule 60(b). See, e.g., *Parke-Chapley Construction Co. v. Cherrington*, 865 F.2d 907 (7th Cir. 1989); *Cash v. Illinois Division of Mental*

*Health*, 209 F.3d 695, 698 (7th Cir. 2000); *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800 (7th Cir. 2000); *Banks v. Chicago Board of Education*, 750 F.3d 663, 668 (7th Cir. 2014). Instead of trying to relitigate the merits through Rule 60(b), a litigant has to come up with something *different*—perhaps something overlooked before, perhaps something new. See, e.g., *Gonzalez v. Crosby*, 545 U.S. 524, 536–38 (2005); *Ackermann v. United States*, 340 U.S. 193 (1950).

Rule 60(b)(1) does have a special use in allowing a district court to reopen a default judgment that was entered because of the litigant's mistake or excusable neglect. But this does not imply that a losing litigant's mistake about how much time he has to file an appeal provides a basis for reopening, when the goal of the Rule 60(b) motion is to extend the time for appeal rather than to get an *initial* decision on the merits in the district court.

The Rules of Appellate Procedure nonetheless offer some assistance to litigants who misunderstand when an appeal must be filed. Rule 4(a)(5)(A)(i) permits a district judge to add another 30 days to the time for appeal, if "a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires". It is unclear to us why the district judge did not treat Bell's motion as one under that rule. After all, the judge knew that the motion had been miscaptioned. It called itself a Rule 59 motion for reconsideration; the judge recognized that it was too late to be *that* and treated it as if it were a Rule 60 motion. Why not treat it as a Rule 4(a)(5) motion instead? The judge did not say.

A court of appeals cannot grant relief under Rule 4(a)(5), but a district judge can—and the judge can grant that relief to Bell even now, because the document that Bell filed on

September 11 was within the time allowed by Rule 4(a)(5)(A)(i), and the Rule does not set an outer limit for action by the district court. A district could may allow a potential appellant an extra 30 days measured from the judgment, or an extra 14 days from the time the extension order is entered, whichever is later. Rule 4(a)(5)(C). A court of appeals has the authority to order "such further proceedings to be had as may be just under the circumstances." 28 U.S.C. §2106. We think that a remand, so that the district court may decide whether to allow Bell more time for appeal, is the best way to proceed.

Lest the appeal come right back to us for decision on the merits, we add that if the district judge is inclined (in light of the analysis in this opinion) to revisit the judgment as well as to grant extra time, we grant him permission to do so under Circuit Rule 57.

Finally, to tie up one loose end, we see no reason for the district judge to give a second thought to Bell's argument that Rushville's (asserted) failure to give him the benefit of procedures established by state law creates a problem under §1983. Although the Due Process Clause sometimes requires procedures, as a matter of federal law, when state statutes and regulations define substantive entitlements, it does not treat state procedural requirements as property interests in their own right. See *Hewitt v. Helms*, 459 U.S. 460 (1983); *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Sandin v. Conner*, 515 U.S. 472 (1995).

The case is remanded with instructions to treat the document filed on September 11, 2014, as a request for an extension of time under Rule 4(a)(5).