In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 17-1658

JOHN M. GLEASON,

*Plaintiff-Appellant,*

*v.*

CHRISTOPHER A. JANSEN,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 10286 — **Joan Humphrey Lefkow**, *Judge.*

_____

SUBMITTED FEBRUARY 1, 2018[*] — DECIDED APRIL 25, 2018

_____

Before WOOD, *Chief Judge*, and KANNE and BARRETT, *Circuit Judges*.

WOOD, *Chief Judge*. This case began as an adversary proceeding in Christopher Jansen's chapter 7 bankruptcy case. It

_____

[*] We have agreed to decide this case without oral argument, because oral argument would not significantly aid the court, and the briefs and record contain everything necessary for our decision. FED. R. APP. P. 34(a)(2)(C).

turned into a procedural snarl, however. We have concluded that the only part of the case properly before us is an appeal from a denial of relief under the bankruptcy equivalent of Federal Rule of Civil Procedure 60. That decision was correct, and so we affirm the judgment of the district court.

**I**

John Gleason was one of Jansen's creditors. At an appropriate time, Gleason filed an adversary proceeding in the case to obtain a ruling that Jansen's debt to him was nondischargeable under 11 U.S.C. § 523(a)(2)(A), which covers obligations obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The debt in question was an unpaid default judgment for roughly $400,000 that Gleason had obtained against Jansen in a case involving an allegedly phony investment scheme. See *Gleason v. Jansen*, 76 Mass. App. Ct. 1128 (2010) (table decision). Gleason moved for summary judgment under Federal Rule of Bankruptcy Procedure 7056, on the ground that Jansen was not entitled to relitigate the Massachusetts judgment. The bankruptcy court denied that motion and held a bench trial.

At the trial, further details about the Massachusetts case came to light. Gleason, who at the relevant time had been working for several entities as an "M&A finder," gave $141,000 to Jansen's company, Baytree Investors, to cover closing costs in a business acquisition. The deal never closed, however, and Jansen never fully refunded the money to Gleason after it fell through. Gleason's checks, endorsed by "Talcott Financial Corporation D/B/A Baytree Investors, Inc.," were deposited in a bank account numbered 100-177-5. Where

the money went after that is unknown, but Gleason tried pursuing Jansen in the Massachusetts litigation. Jansen later pleaded guilty to unrelated charges of wire fraud and tax evasion. Those charges concerned a corporate purchase he made, after which he skimmed substantial amounts of money from the corporation for his own benefit. Part of the scheme involved the use of a bank account in the name of Talcott Financial Corporation, an Illinois entity that was involuntarily dissolved in 1999. This court recently affirmed his conviction on those charges, with one minor adjustment to his restitution order. See *United States v. Jansen*, 884 F.3d 649 (7th Cir. 2018).

Jansen defended himself *pro se* at the bankruptcy trial. He testified that the "Talcott Financial Corporation" that was the subject of his criminal case was a different entity from the "Talcott Financial Corporation" whose name appeared on the endorsement of the checks. The latter Talcott Financial was, he said, an unincorporated internal business unit of Baytree (despite the implication on the checks that Talcott was the primary company and Baytree was the business name). The two Talcotts, he asserted, had different bank accounts, though the only one in the record is 100-177-5, which belonged to Baytree/Talcott. The alleged other account (which was held by the other Talcott) was the subject of the criminal case and was closed in 2003.

The bankruptcy court credited Jansen's story and found that Gleason had failed to establish that Baytree/Talcott and Talcott were one and the same, such that it could be presumed that Gleason was using the funds in Baytree/Talcott to cover personal expenses. It also found that even if there were only one account, Gleason had failed to prove that Jansen had defrauded him intentionally. It observed that Jansen's efforts to

avoid the Internal Revenue Service by mixing personal and business funds in one account did not necessarily show that he misused Gleason's money, let alone that he obtained it fraudulently. The court concluded that Gleason had not proven the fraud and so the debt was dischargeable.

While the bankruptcy trial was still underway, Jansen was trying to withdraw his plea of guilty in the criminal case. This complicated matters. The bankruptcy court warned him in its opinion denying summary judgment that any effort to invoke the Fifth Amendment privilege against self-incrimination could lead to an adverse inference for bankruptcy purposes. It relied on *In re Fetla's Trading Post, Inc.*, Adv. No. 05 A 00926, 2006 WL 538802 (Bankr. N.D. Ill. Mar. 2, 2006)—a case (as the bankruptcy court explicitly noted) that Jansen knew well, because he was the party who had tried to invoke the Fifth Amendment in that very case. Notwithstanding the warning, Jansen asserted his Fifth Amendment privilege throughout the proceeding: in his answer; in discovery; and in response to questions posed at the trial.

For his part, Gleason filed notices of appeal to the district court with abandon: first, he appealed the bankruptcy court's denial of his motion for summary judgment and its judgment after the trial; second, he appealed the bankruptcy court's dismissal of a show-cause order issued to Jansen for filing several frivolous motions to dismiss; and third, he filed a notice simply to correct the caption in the first two notices. All of these notices were docketed in the district court as case number 14 C 06878. We refer to that case as the "merits appeal."

Shortly after he filed the merits appeal, Gleason discovered evidence that (he believes) shows that Jansen had perjured himself at the bankruptcy trial. Gleason's attorney

looked at the publicly available record in *Fetla's Trading Post* and discovered statements for bank account 100-177-5. Those statements included images of checks paid from the account, and showed the payor on the face of the checks as "Christopher A. Jansen, President, Talcott Financial Corporation." Gleason was convinced that these records, spanning the time from June 1999 through January 2004, revealed that Jansen had used account 100-177-5 for personal expenses. From this, Gleason inferred that Jansen had lied to the bankruptcy court when he said that the account involved in the criminal case had been closed in 2003.

Gleason rushed back to the bankruptcy court with a motion for relief from the judgment under Bankruptcy Rule 9024, which in turn incorporates Federal Rule of Civil Procedure 60(b). The materials from *Fetla's Trading Post*, he argued, qualified as "newly discovered evidence," and he asserted that they demonstrated fraud or misconduct or fraud on the court, or otherwise warranted re-opening the case. See FED. R. CIV. P. 60(b)(2), 60(b)(3), 60(d)(3), 60(b)(6). Because the case was already before the district court, however, Gleason also asked the bankruptcy court for an indicative ruling under the bankruptcy analog to Federal Rule of Civil Procedure 62.1. See FED. R. BANKR. P. 8008 (effective shortly after Gleason made his motion). The bankruptcy court declined to issue such a ruling. In its view, the *Fetla's Trading Post* evidence, easily found on PACER, was far from new, and the interest in finality counseled against re-opening the case. Gleason filed yet another notice of appeal to the district court, challenging this decision. We refer to it as the "Rule 60 appeal."

## II

Initially, the merits appeal proceeded normally. The district court issued a scheduling order and things appeared to be on track. Three weeks before Gleason's opening brief was due, however, Jansen filed a motion to dismiss the appeal as untimely. At that point, the district court vacated its scheduling order. After further reflection, however, Jansen conceded that it was timely, and the district court entered an order denying the motion to dismiss. It did not enter any new scheduling order, and so neither party filed an appellate brief on the merits.

The day after the court entered the order denying the motion to dismiss the merits appeal, the Rule 60 appeal was docketed and assigned to the same judge under case number 14 C 10286. The judge scheduled a status hearing for February 15, 2015. At the hearing, she stated that "[t]he parties and issues" in the two cases were "essentially the same." She accordingly dismissed the merits appeal without prejudice and closed the docket for that case. Nonetheless, she did not enter a scheduling order for the Rule 60 appeal. The only entry on the docket is a minute order stating that "[a]ll relevant briefs from the bankruptcy court, and the transcript … are to be submitted no later than 4/13/2015. Ruling will issue by mail." Gleason filed the record in the Rule 60 appeal on April 13. That record included his motion for relief from the bankruptcy court's judgment as well as the trial transcript. The district court already had the summary-judgment materials.

After that, the case went dead for nearly two years. Neither party filed a new brief (or anything else), nor did the district court enter anything on the docket in either case. The case came back to life on February 27, 2017, when the court issued

its ruling in the Rule 60 appeal. Finding no abuse of discretion in the bankruptcy court's refusal to re-open the case, the court affirmed that order. Its order leaves no doubt that the judge thought that she had only the Rule 60 matter before her. Gleason then appealed to this court.

## III

Before turning to the present appeal, we must clarify what exactly is before us. The short answer is "less than meets the eye." Ever since February 15, 2015, when the district court dismissed the appeal in case number 14 C 06878—the merits appeal—the only matter that was before the district court was appeal number 14 C 10286, which is from the bankruptcy court's rejection of Gleason's Rule 60 motion. This state of affairs appears to be rooted in an error the district court made at the time it dismissed the merits appeal, when it said that the parties and the issues in the two appeals were essentially the same. The parties may have been the same, but the issues were decidedly different. As we noted in *Bell v. McAdory*, 820 F.3d 880 (7th Cir. 2016), "it is canonical that an appeal from the denial of a motion under Rule 60(b) does not allow the court of appeals to address the propriety of the original judgment." *Id.* at 883, citing *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 263 n.7 (1978) ("an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review"). The only question raised in a Rule 60(b) appeal is whether the trial court abused its discretion by refusing to grant the extraordinary relief recognized in that rule (and in its bankruptcy equivalent, as applied here).

What Gleason should have done, but did not, was to file a protective notice of appeal to this court from the district

court's dismissal of the merits appeal. We grant that the district court said that its dismissal of the merits appeal was "without prejudice," and that dismissals without prejudice are normally nonfinal for purposes of appellate jurisdiction under 28 U.S.C. § 1291. See *Am. States Ins. Co. v. Capital Assocs. of Jackson Cnty., Inc.*, 392 F.3d 939, 940 (7th Cir. 2004). Nonetheless, the label "without prejudice" does not always prevent a disposition from being a *de facto* final judgment. When it is clear that the district court is finished with a particular case and that nothing can be done to revive it, the judgment is final. See *Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011) ("we have repeatedly found that even if a court dismisses claims 'without prejudice,' we assess 'finality' by whether the district court 'has finished with the case'"); *Hill v. Potter*, 352 F.3d 1142, 1144–45 (7th Cir. 2003) ("The test is whether the district court has finished with the case."). Here, the district court gave no indication that it was prepared to reopen the merits case. Instead, albeit mistakenly, the court thought that the merits case overlapped with the Rule 60 appeal. Under these circumstances, we conclude that the dismissal of the merits appeal represented the district court's last word on the case as a whole.

It also makes no difference whether the district court entered a separate judgment pursuant to Federal Rule of Civil Procedure 58. Normally such a judgment is required, and it is certainly good practice to take advantage of the rule, because a Rule 58 judgment eliminates all doubt about the disposition of a case. Nevertheless, the rules now address the question what to do when no such judgment exists. Under Federal Rule of Appellate Procedure 4(a)(7)(A)(ii), a civil judgment such as this one becomes final on the earlier of two dates: the date of entry of the separate judgment, or 150 days after entry of the

order in the civil docket. See *Perry v. Sheet Metal Workers' Local No. 73 Pension Fund*, 585 F.3d 358, 361 (7th Cir. 2009). A notice of appeal would be due 30 days later. Fed. R. App. P. 4(a)(1)(A). Even if we were generously to treat Gleason's notice of appeal to this court in the Rule 60 case as if it were also a notice of appeal in the merits case (and we doubt that this would be proper), it was filed long after the 180-day mark and thus is jurisdictionally late. See *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

What, though, of the fact that Gleason was lulled by the district court into thinking that he would be able to raise his merits argument in his Rule 60 appeal? The Supreme Court's decision in *Bowles* furnishes the answer to that question, too. Before *Bowles*, the courts of appeals had excused noncompliance with civil appellate filing rules if "unique circumstances" existed, and they had singled out erroneous advice from the district court as one such circumstance. The Supreme Court squarely rejected that approach in *Bowles*, where it wrote the following:

> Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement. Because this Court has no authority to create equitable exceptions to jurisdictional requirements, use of the "unique circumstances" doctrine is illegitimate.

*Id.* at 214. The Court acknowledged that such an inflexible rule might occasionally yield inequitable results, but it held that only Congress is empowered to create exceptions, and it has not done so in the civil context. As applied here, this rule means that Gleason is out of luck: the district court's mistaken assumption that it could reach the merits of his case in the

later-filed Rule 60 appeal is not enough to revive the dismissed merits appeal.

We conclude, therefore, that it is too late for Gleason to obtain a remand for the district court to consider the underlying merits of his case. Furthermore, we have no jurisdiction to comment on any arguments that might have been raised on a direct appeal. All that is properly before us is Gleason's appeal from the bankruptcy court's refusal to grant relief under Bankruptcy Rule 9024, which as we said incorporates Federal Rule of Civil Procedure 60.

Our disposition of that narrow issue can be brief. Gleason raised four grounds for relief from the bankruptcy court's judgment, but both the bankruptcy court and the district court focused only on his argument based on newly discovered evidence. See FED. R. CIV. P. 60(b)(2). The bankruptcy court concluded, and the district court agreed, that evidence that was available at all times on PACER is not "newly discovered." Gleason's attorney urges that reasonable diligence would not have revealed the evidence he found in the *Fetla's Trading Post* docket, because a PACER search for "Christopher Jansen" does not bring up that case. But that is beside the point: in its summary judgment order, the bankruptcy court had already found and cited *Fetla's Trading Post*, and so it was no secret that Jansen was involved in that litigation. Indeed, a quick look at the opinion reveals a caption listing Jansen, Baytree, and Talcott as defendants. After the bankruptcy court denied summary judgment, Gleason's attorney had nine months to review the case before the bankruptcy court's final ruling. This is not the stuff of a Rule 60(b)(2) motion. To the contrary, as we noted in *Kunik v. Racine Cnty.*, 106 F.3d 168, 174 (7th Cir. 1997), "untimely reviews of the record for

supporting evidence reveal cause for sanctions; they are not the kind of 'excusable neglect' that Rule 60(b) is designed to address."

Gleason next contends that his "new" evidence demonstrates fraud, misrepresentation, or misconduct for purposes of Rule 60(b)(3). To justify relief from judgment on that ground, the fraud must prevent the opposing litigant from fully and fairly presenting a meritorious claim at trial. See *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010). Jansen's failure to produce the bank statements for account 100-177-5 might have violated a discovery order, but that is not the same thing as fraud. We can assume for present purposes that Jansen lied at trial. This evidence does undermine his testimony that account 100-177-5 was never owned by Talcott (a position he has contradicted in this court). Nonetheless, the bankruptcy court did not abuse its discretion when it denied Gleason's motion for relief. Gleason's evidence relates to the question whether the mysterious account involved in Jansen's criminal case and account 100-177-5 were one and the same. But that fact is only one, relatively minor, part of the evidence that might have shown that Jansen defrauded Gleason. Gleason still failed to prove that Jansen did not use the money for the agreed purposes or that he obtained the funds through intentional fraud. Or at least the bankruptcy court could so find. It was thus within its authority to conclude that the interest in finality outweighed Gleason's allegations of misconduct.

Finally, Gleason argues that Jansen's alleged perjury constituted fraud on the court under Rule 60(d)(3), or that it justified relief under Rule 60(b)(6)'s catch-all provision. Neither contention is correct. See *Citizens for Appropriate Rural Rds. v.*

*Foxx*, 815 F.3d 1068, 1080 (7th Cir. 2016) ("Fraud on the court occurs only in the most extraordinary and egregious circumstances and relates to conduct that might be thought to corrupt the judicial process itself, such as where a party bribes a judge or inserts bogus documents into the record."); *Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006) (noting that Rule 60(b)(6) is mutually exclusive vis-à-vis Rule 60(b)(1)–(3)).

We AFFIRM the judgment of the district court.