NATIONAL INDUSTRIES, INC., a Kentucky corporation, Plaintiff-Appellee,

v.

REPUBLIC NATIONAL LIFE INSURANCE COMPANY, a Texas corporation, Defendant-Appellant.

No. 79–3123.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1980.

Decided May 10, 1982.

---

Robert W. Holland, Carson, Messinger, Elliott, Laughlin & Ragan, Phoenix, Ariz., for defendant-appellant.

Douglas L. Irish, Phoenix, Ariz., argued, for plaintiff-appellee; Paul G. Ulrich, Lewis & Roca, Phoenix, Ariz., on brief.

Before TRASK, WALLACE and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

## I. INTRODUCTION

This is a diversity case between the judgment creditors of successive record title holders to real property. In nearly every sense, the parties to this litigation, hereinafter referred to as "National" and "Republic," are contestants in a championship fight for the title to a 40-acre tract of improved land known as the 5–G Ranch located in Maricopa County in the State of Arizona.

The parties claim title to the property through separate execution sales. Both were victorious in their preliminary bouts which were staged in different arenas. National proceeded in state court and secured a judgment quieting its title against other adverse claimants. Republic achieved similar results in federal court. Neither was a party nor privy to the other's suit and thus neither is bound by the other's judgment. The stage was set and the parties squared off in 1970 when National filed this quiet title action against Republic.

The elusive nature of the issues raised in this action is adequately demonstrated by the rather remarkable and abrupt turn of events experienced by the parties during the course of this litigation. Republic won the first round when the district court, sitting without a jury, granted its motion to dismiss at the close of National's case-in-chief pursuant to Fed.R.Civ.P. 41(b). The next round went in National's favor when this court reversed the dismissal on appeal and held that National had established a prima facie case of superior title. Round three began upon remand and ended when the district court granted National's motion for summary judgment. That judgment is now before us on appeal. We hold that in one respect the fight was stopped prematurely.

## II. FACTUAL BACKGROUND

The title evidence in the record before us indicates that in 1965 the 5–G Ranch was deeded to Philip Goldberg and his wife, Ruth. The parties tell us that Philip Goldberg was a promoter who built an "insurance empire," at least in part through his ownership and control of the Financial Security Life Insurance Company (FSLIC).

In 1966, the Goldbergs conveyed the 5–G Ranch to FSLIC in exchange for a promissory note, the precise nature of which is disputed by the parties. On its face, the note generally provides that FSLIC agrees to pay the Goldbergs $350,000.00, payable on demand and subject to the following terms and conditions: (1) that interest will accrue at the rate of six per cent per annum; (2) that the principal and accrued interest shall be repaid only out of that part

of the unassigned surplus of FSLIC which is in excess of $850,000.00; and (3) that the holders of the note may at any time require the reconveyance of the 5–G Ranch, and that such reconveyance shall constitute full satisfaction of the obligations under this note.

FSLIC reconveyed the ranch to the Goldbergs by deed dated April 17, 1967. The deed recites that the conveyance was made to the Goldbergs as joint tenants with the right of survivorship. It was recorded on June 21, 1967, and bears the notation that it was recorded at the request of FSLIC "without J.T. acceptance." A second deed dated April 17, 1967, and recorded on June 22, 1967, purports to convey the ranch from FSLIC to the Goldbergs "not as tenants in common and not as a community property estate, but as joint tenants with right of survivorship...." In addition, this deed contains an acknowledgment signed by both Goldbergs which recites that their signatures evidence "their intention to acquire said premises as joint tenants with the right of survivorship, and not as community property or as tenants in common."

Thereafter, the Goldbergs transferred the ranch to various third persons. Those transfers were subsequently set aside as fraudulent conveyances by both National and Republic in their separate lawsuits, and they are of no consequence to this appeal.

The parties also tell us that Philip Goldberg's "insurance empire" collapsed under the scrutiny of investigations by, among others, the Arizona State Department of Insurance which assumed control of FSLIC, and that Philip Goldberg was eventually convicted of mail fraud. These events sent the creditors of Goldberg and FSLIC scrambling to find assets to proceed against in satisfaction of their claims.

National is a creditor of Philip Goldberg. It obtained a money judgment against Goldberg in a New York state court, which it later reduced to a judgment in an Arizona state court. By purchase at an execution sale, National received a sheriff's deed of Philip Goldberg's interest in the 5–G Ranch. National then secured a judgment setting aside, as a fraud upon it, the trans-

fer from the Goldbergs to FSLIC and later from the Goldbergs to third persons, and quieting title to the ranch in itself.

Republic is a creditor of FSLIC. It obtained a money judgment against FSLIC in the Arizona federal district court, and later received a marshal's deed of FSLIC's interest in the 5–G Ranch. Republic then secured a judgment setting aside the conveyance from FSLIC to the Goldbergs as a fraud on it, and quieting its title to the ranch against the Goldbergs and their grantees.

### III. PRIOR PROCEEDINGS

In 1970, National initiated this quiet title action against Republic. At the close of National's case-in-chief, the district court granted Republic's motion to dismiss pursuant to Fed.R.Civ.P. 41(b). On appeal, this court reversed in an unpublished memorandum decision which held that National had established a prima facie case for quiet title relief. *National Industries, Inc. v. Republic National Life Insurance Co.*, 534 F.2d 333 (table) (9th Cir. 1976). Of key importance to that decision was this court's determination of the proper evidentiary effect to be given a judgment in a subsequent suit between strangers. Drawing from section 639 of the California Evidence Code, this court concluded that a judgment is presumed to correctly set forth the rights of the parties, but there is no presumption that the facts essential to the judgment have been correctly determined.

Therefore, it was held that National made out a prima facie case for quiet title relief against Republic by way of the following analysis:

"National met this burden by introducing the deeds from FSLIC to the Goldbergs and then to others, the Arizona money judgment against Philip Goldberg, the sheriff's deed to National of Philip Goldberg's interest in the property and the judgment quieting National's title as against the Goldbergs and their grantees. The judgment is not evidence that the conveyances from the Goldbergs are void as frauds on their creditors or that Ruth Goldberg's interest is void as a fraud on Philip Goldberg's creditors. Admission of

the judgment in evidence does, however, raise a presumption that as between National on the one hand, and Philip and Ruth Goldberg and their grantees on the other, National has title to the property. This is sufficient to establish a prima facie title in National. [citation omitted].

"National also established a prima facie case of superior title. Republic has a marshal's deed of FSLIC's interest in the property. The pleadings and title evidence, however, do not demonstrate that at the time of Republic's levy or sale, FSLIC had any interest in the property. Republic has a judgment setting aside the conveyance from FSLIC to the Goldbergs as a fraud on it, as one of FSLIC's creditors, and quieting Republic's title to the property against the Goldbergs and their grantees. The suit was filed after National acquired Goldberg's interest in the property and National was not a party. Thus National is not bound by that judgment. Nor is the judgment admissible against National to prove that the FSLIC-to-Goldbergs conveyance was fraudulent. The only effect of the judgment in this suit is to raise a presumption that as between Republic on the one hand, and the Goldbergs and their grantees on the other, Republic has title. This presumption has no effect on National's title."

Consequently, the case was remanded and this court noted that Republic could rebut National's prima facie case by, for example, showing that Ruth Goldberg had a valid community property interest in the property which could not be reached by National as a creditor of Philip Goldberg only, or that the FSLIC-to-Goldbergs conveyance was fraudulent.

National wasted no time in taking advantage of this favorable ruling and moved for summary judgment immediately upon remand. It had established a prima facie case for quiet title relief and took the initiative to preempt the two avenues of rebuttal suggested by this court in its memorandum disposition. National contended that there were no material factual questions concerning the community property and fraudulent conveyance issues, and that it was entitled to a judgment as a matter of law. The district court agreed and entered judgment. Republic seeks review of the summary judgment.

## IV. JURISDICTION

Before proceeding to the merits, we must address a jurisdictional issue. National has raised a challenge to this court's jurisdiction to review the merits of the summary judgment by questioning the timeliness of Republic's notice of appeal therefrom. Although two members of this court previously denied National's motion to dismiss that portion of the appeal, we do not consider the denial of the motion to have foreclosed our ultimate reconsideration and disposition of the issue. *United States v. Humphries*, 636 F.2d 1172, 1174 n. 2 (9th Cir. 1980), *cert. denied*, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981).

After a hearing on July 31, 1978, the district court granted National's motion for summary judgment and signed a stipulated form of final judgment on November 30, 1978. That judgment was entered by the clerk on December 7, 1978. Before entering the judgment, however, the clerk notified National's counsel that the form of judgment technically did not comply with Fed. R.Civ.P. 54(a), in that it contained various recitals of the prior proceedings. National's counsel informed the clerk that arrangements would be made with Republic's counsel for submitting a revised form of judgment. Republic's counsel was then advised of the problem and presented with a restated judgment on December 13, 1978. Apparently, Republic's counsel failed to respond to the proposed form of the restated judgment and it was never presented to or signed by the district judge. The elimination of the unnecessary recitals in the judgment entered, being a wholly ministerial matter, would have had no effect on the finality of the judgment,[1] and the parties do not contend otherwise. It is pertinent

1. *See Lieberman v. Gulf Oil Corp.*, 315 F.2d 403, 404 (2d Cir.), *cert. denied*, 375 U.S. 823, 84 S.Ct. 62, 11 L.Ed.2d 56 (1963).

here only as it relates to the proceedings that followed.

On January 3, 1979, Republic filed a motion for relief from judgment under Fed.R. Civ.P. 60(b), contending that summary judgment was improper in light of genuine issues of fact. Two days later, and within 30 days from the entry of judgment, Republic moved *ex parte* for an extension of time in which to appeal. The extension was requested on the grounds that a revised form of judgment had not been proposed to the court or entered, and that its Rule 60(b) motion would not be heard until the time for filing a notice of appeal had elapsed. Judge Craig granted the extension through February 6, 1979.

On January 12, 1979, National filed a motion to quash the time extension along with its response in opposition to Republic's motion for relief from judgment. In support of its motion to quash, National contended that Republic had presented the district court with an inaccurate account of the problems associated with the form of judgment, and that Republic was responsible for the delay in substituting a corrected form of judgment. Moreover, National argued that the time for taking an appeal should not have been enlarged to permit a hearing and ruling on Republic's Rule 60(b) motion.

A hearing on the pending motions was held on January 29, 1979. Without a statement of reasons or an explanation of any kind, the district court granted National's motion to quash the time extension and denied Republic's motion for relief from judgment. On February 5, 1979, Republic filed a motion for reinstatement of the original time extension or, in the alternative, for a renewed grant of additional time. The motion was denied. On that same day, February 5, 1979, Republic filed a notice of appeal from the following orders: (1) the order granting National's motion for summary judgment entered on December 7, 1978; (2) the order denying Republic's motion for relief from judgment entered on January 29, 1979; (3) the order granting National's motion to quash the extension of time to appeal entered on January 29, 1979, and (4) the order denying Republic's motion to reinstate or extend anew the time to appeal entered February 5, 1979.

■ It is not disputed that we have jurisdiction to review the latter three of the four rulings listed in Republic's notice of appeal, including the district court's quashing order. National maintains, however, that the order quashing the time extension renders untimely Republic's appeal from the summary judgment, thus precluding review by this court. National's position rests upon Fed.R.App.P. 4(a), which prescribes a 30-day period from the entry of judgment in which to file a notice of appeal in civil cases between private parties.[2] The requirement that a notice of appeal be timely filed is characterized as mandatory and jurisdictional. *Browder v. Director, Dept. of Corrections of Illinois*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978). This means that, ordinarily, appellate jurisdiction does not extend to otherwise final and appealable orders and judgments entered more than 30 days prior to the filing of an appeal. Under the circumstances of this case, however, we do not perceive our jurisdiction to be so limited.

■ Upon a showing of excusable neglect, the statutorily-prescribed time for filing a notice of appeal may be extended by the district court for a period not to exceed an additional 30 days. Fed.R.App.P. 4(a). Such an extension may be obtained before or after the initial time limit has expired. *Id.*[3] A request for an extension before that time has elapsed may be made by *ex parte* motion.[4] *Benoist v. Brotherhood of Loco-*

2. Appellate Rule 4 was amended, effective as of August 1, 1979, and this provision now appears as Rule 4(a)(1).

3. Prior to the 1979 amendments, Rule 4(a) permitted an extension of time "upon a showing of excusable neglect." The excusable neglect standard never really fit the situation when the request was made within the initial time limit.

Rule 4(a)(5) now permits a time extension "upon a showing of excusable neglect *or good cause*." (emphasis added).

4. Prior to the 1979 amendments, Rule 4(a) provided for such notice as the court thought appropriate if the request for an extension was made after the initial time had expired. The rule was silent as to motions made within the

*motive Engineers,* 555 F.2d 671, 672 (8th Cir. 1977). Thereafter, the request "shall be made by motion with such notice as the court shall deem appropriate." Fed.R. App.P. 4(a). The grant or denial of an extension of time for appeal is an appealable order reviewed under the abuse of discretion standard. *Matter of Estate of Butler's Tire & Battery Co., Inc.,* 592 F.2d 1028, 1032 (9th Cir. 1979); *Gooch v. Skelly Oil Co.,* 493 F.2d 366 (10th Cir.), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974); *see generally,* 9 Moore's Federal Practice ¶ 204.13[4], at 4–107, 4–108 (2d ed. 1980).

In this case, Republic moved *ex parte* for an extension of time before the initially prescribed period had expired. Had the motion been denied then, Republic could have simply filed its appeal. It was not. The motion was granted and Republic's notice of appeal was eventually filed within the extended time. In the interim, however, the district judge reversed his prior ruling and quashed the extension.

■ National characterizes the district court's quashing order merely as a reversal of its prior determination on the presence or absence of excusable neglect. They would have us review, for an abuse of discretion, the district court's finding that excusable neglect was lacking. Were we to adopt that suggestion, we could not conclude that the district judge abused his discretion. Extensions of time for appeal should not be granted absent the moving party's failure to learn of the entry of judgment or extraordinary circumstances where injustice would otherwise result. *Butler's Tire & Battery Co., supra,* 592 F.2d at 1034. We are of the opinion, however, that National's approach is too narrow. It completely ignores that the moving party has delayed filing a notice of appeal in reliance on the trial court's erroneous finding of excusable neglect, and that the erroneous finding was made within the appropriate time for taking an appeal. Therefore, the

moving party is denied the option of simply filing its notice of appeal at the proper time. This single factor places the instant case squarely within the operation of the "unique circumstances" doctrine that was announced in *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962).

■ In *Harris,* the appellant had obtained an extension before the initial time for appeal had elapsed. The court of appeals dismissed the appeal upon the determination that appellant had failed to establish excusable neglect. The Supreme Court reversed, holding that:

> "In view of the obvious great hardship to a party who relies upon the trial judge's finding of 'excusable neglect' prior to the expiration of the 30-day period and then suffers reversal of the finding, it should be given great deference by the reviewing court. Whatever the proper result as an initial matter on the facts here, the record contains a showing of unique circumstances sufficient that the Court of Appeals ought not to have disturbed the motion judges' ruling."

*Id.* 371 U.S. at 217, 83 S.Ct. at 285. As this court observed in *Butler's Tire & Battery Co., supra,* the court of appeals was reversed "not because its conclusion regarding excusable neglect was wrong, but because appellant had relied on the district court's finding of excusable neglect to its detriment." 592 F.2d at 1034. The crucial factor is the appellant's reliance on the district court's initial finding of excusable neglect. It is of no consequence to this analysis that the district court properly found excusable neglect lacking upon reconsideration. Nor do we perceive a meaningful distinction in the fact that it was the district court, and not the court of appeals, that reversed the initial determination. Republic relied on the first determination, and the "unique circumstances" of this case justify the exercise of our jurisdiction to review the merits of the summary judgment.[5]

initial time limit. Rule 4(a)(5) now specifically provides that an extension motion "filed before expiration of the prescribed time may be ex parte unless the court otherwise requires."

5. Our disposition of the jurisdictional issue renders moot the issues relating to the latter two orders specified in Republic's notice of appeal.

One other matter deserves some discussion. In its brief to this court, National claims that Republic obtained the time extension upon a "less than complete and candid explanation," or "incomplete and colored explanation" of the facts surrounding the form of the judgment entered on December 7, 1978. Although somewhat ambiguous, these characterizations seem to imply some misconduct by Republic in obtaining the extension that would justify the refusal to review the summary judgment. First, we reiterate that Fed.R.App.P. 4(a) permits a party to proceed by *ex parte* motion, if the request for a time extension is made within the prescribed time for appeal. Of course, this procedure does not relieve the party of its obligation to fully and truthfully disclose all the facts relevant to its motion. However, it must also be conceded that adversary parties, acting in good faith, will not always agree on the facts that are relevant to a particular issue. It would be naive to believe otherwise. Second, we assume, but need not decide, that a party may lose its right to appeal if it has obtained an extension of time by deceptive or fraudulent means. This court will not hesitate to deny any party the benefit of its misconduct. However, in the absence of a specific finding by the district court, such serious misconduct will not lightly be inferred by this court. The record before us here is wholly inadequate even to raise the issue. As mentioned above, the motion to quash and Republic's motion for relief from judgment were combined for hearing. At the hearing, there was no argument on the motion to quash. The motion was granted, but no reasons were stated. We are confident that if Judge Craig thought that Republic had engaged in misconduct in obtaining the extension, he would not have let it pass without comment.

## V. SUMMARY JUDGMENT

### A. Standard of Review

In reviewing the grant of a summary judgment, we employ the same standard as that binding on the trial court. *Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 980 (9th Cir. 1980); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1264 (9th Cir. 1979). Consequently, we will affirm a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For this purpose, all permissible inferences from the evidence must be drawn in favor of the non-moving party. *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 617 (9th Cir. 1981).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact, regardless of where the ultimate burden of proof would lie at trial. *Long v. Bureau of Economic Analysis*, 646 F.2d 1310, 1320–1321 (9th Cir.), *vacated on other grounds*, —— U.S. ——, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981); *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir. 1980); *Weisberg v. United States Dept. of Justice*, 627 F.2d 365, 368 (D.C.Cir.1980). It is not enough for the moving party to present evidence that is legally sufficient to support a judgment in its favor or, put another way, evidence upon which a reasonable trier of fact could rationally base a verdict in its favor. That formulation of the standard would ignore that a reasonable trier of fact might also construe the same evidence to support a different result. Contradictory inferences may be drawn from undisputed evidentiary facts. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 345 (9th Cir. 1978). However, summary judgment should be granted when the evidence in support of the motion would, if uncontradicted, entitle the moving party to a directed verdict were the case to proceed to trial. *Bieghler, supra*, 633 F.2d at 533; *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *Neely, supra*, 584 F.2d at 344–45. Accordingly, the movant's evidence should demonstrate as a matter of law the absence of genuine issues of fact to present to the fact-finder. *Garter-Bare, supra*, 650 F.2d at 979; *Neely, supra*, 584 F.2d at 344–45.

If that burden is satisfied, then the party opposing the motion must present sufficient evidence supporting a claimed factual dispute so as "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); *British Airways Bd., supra*, 585 F.2d at 952; *Neely, supra*, 584 F.2d at 344. The non-moving party may not rest upon the mere allegations of its pleadings to resist an adequately-supported motion for summary judgment. *Castanada, supra*, 648 F.2d at 617.

### B. The Community Property Issue

██ As noted above, Republic could have rebutted National's prima facie case for quiet title relief by proving that the FSLIC-to-Goldbergs conveyance passed title to the ranch as community property. This result would follow because under Arizona law, community property is not liable for the separate debts of one spouse.[6] *Hamada v. Valley National Bank*, 27 Ariz.App. 433, 436, 555 P.2d 1121, 1124 (1976). National contended that the deeds in evidence were sufficient, as a matter of law, to establish that joint tenancy interests, rather than community property interests, were created by the conveyance. In opposition, Republic failed to present any factual evidence, but instead rested entirely on the strength of Arizona's presumption in favor of community property. Consequently, we are not put to the task of determining whether the non-moving party's evidence is sufficient to raise a genuine issue of fact; rather we must decide only whether National's motion on this particular issue was adequately supported.

██ It is a well-settled principle of law in Arizona that all property acquired by either or both of the spouses during coverture is presumed to be community property. *King v. Uhlmann*, 437 P.2d 928, 943 (Ariz.1968); *Bender v. Bender*, 123 Ariz. 90, 597 P.2d 993, 995–96 (Ariz.App.1979). This presumption is a creature of state law and we must

look to the law of Arizona for the effect it is to be given in these proceedings. Fed.R. Evid. 302.

In *Porter v. Porter*, 67 Ariz. 273, 195 P.2d 132 (1948), the Arizona Supreme Court described the presumption as follows:

"This presumption can be rebutted only by 'strong,' 'satisfactory,' 'convincing,' 'clear and cogent,' or 'nearly conclusive evidence.' In this respect it differs from most legal presumptions that are dispelled immediately upon the production of any evidence negativing the presumption. The court must be satisfied that the property really is separate before it can state that the presumption has been dispelled. As long as there is any doubt, the property acquired during coverture must be presumed to be community property."

*Id.* 195 P.2d at 136. Therefore, unlike most other presumptions, Arizona's community property presumption shifts to the party opposing the presumption the burden of proving the creation of an estate other than community property. However, since it was incumbent upon National as the moving party to demonstrate the absence of genuine issues of fact and that it was entitled to prevail as a matter of law, the presumption has only a limited impact in this setting.

Despite the strength of this presumption, Arizona recognizes "[t]he right of a husband and wife to hold property as joint tenants in derogation of their community property status ... provided it clearly appears that the spouses agreed the property should be taken in that manner." *Safley v. Bates*, 26 Ariz.App. 318, 548 P.2d 31, 33 (1976). Applying these principles to the conveyance of real property, Arizona's Supreme Court has held that:

"As between husband and wife a joint tenancy is an exception to the community property rule of this state and in derogation of the general policy of that system of holding property, and this being true a clause in a deed creating a joint tenancy

---

**6.** National has apparently conceded, for the purposes of this motion, that its money judgment related to a separate debt of Philip Goldberg only.

between them should be effective only where it clearly appears that both spouses have agreed that the property should be taken in that way. A deed is generally signed by the grantor only, hence, before a joint tenancy clause may be held binding on the grantees and the community property law thereby defeated, we think it necessary not merely that the deed contain language creating such an estate but that it further appear that the deed was accepted by the spouse whose property it is sought to bring within its terms, knowing that it contained that provision. If the deed itself contains nothing showing this fact, such, for instance, as an acceptance of the terms thereof in the handwriting of the grantees, or an endorsement by the recorder that it was placed of record at the request of the deceased spouse, it might be established by any proper extrinsic evidence."

*In re Baldwin's Estate*, 50 Ariz. 265, 71 P.2d 791, 795 (1937).

In the instant case, National presented two deeds which purport to convey title to the ranch from FSLIC to the Goldbergs. Both deeds are dated April 17, 1967, and contain a joint tenancy clause. One of the deeds was recorded on June 21, 1967. There is no written acceptance by the Goldbergs in that deed, and it bears a notation that it was recorded at the request of FSLIC "without J.T. acceptance." The other deed was recorded on the following day, June 22, 1967, and contains an acknowledgment executed by both Goldbergs which recites that their signatures evidence "their intention to acquire said premises as joint tenants with the right of survivorship, and not as community property or as tenants in common."

■ Republic has argued that the deed first recorded effectively passed title to the Goldbergs and in the absence of their signed acceptances thereon, conveyed the ranch to them as community property. It maintains, therefore, that to create a joint tenancy estate, it was necessary for the Goldbergs to convey the ranch to a third party and then to expressly accept a reconveyance back in joint tenancy form. This argument rests on a misreading of the *Baldwin* case. The *Baldwin* court made clear that spousal acceptance of a joint tenancy estate need not appear on the deed itself. 71 P.2d at 795. The mere fact that a deed which purports to convey property to husband and wife as joint tenants contains no written acceptance of that estate by the grantee-spouses does not make the deed legally ineffective to create a joint tenancy. Although such a deed, standing alone, is insufficient evidence to overcome the presumption in favor of community property, extrinsic evidence is admissible to demonstrate that the spouses did in fact knowingly accept the property as joint tenants. *Baldwin, supra*, 71 P.2d at 795. The second deed recorded, which was signed by Philip and Ruth Goldberg, is proper extrinsic evidence to prove that they knowingly accepted the property as joint tenants.

■ Nevertheless, Republic argues that the notation on the first deed ("Record as is [at the] Request of FSLIC without J.T. acceptance") and the timing of the recordation of the second deed is evidence subject to conflicting inferences giving rise to triable issues of fact. It is asserted that this evidence supports an inference that the grantor, FSLIC, intended to convey the ranch as community property by recording a deed containing a joint tenancy clause, but knowing it to be *facially* insufficient to defeat the community property presumption. Although undisputed evidentiary facts may support contradictory inferences, the inferences must have a sufficient evidentiary basis. *Bieghler, supra*, 633 F.2d at 531; *Neely, supra*, 584 F.2d at 345. In drawing inferences, the trier of fact is not permitted to resort to speculation and surmise. *British Airways, supra*, 585 F.2d at 953. The evidence in this record is simply not susceptible to the inferences suggested by Republic. "Parties are entitled to have the determination of their rights rest on more than speculation and guesswork. Here, the connection between the proffered evidence and conclusions urged is too tenuous to permit a jury to make it." *Neely, supra*, 584 F.2d at 346.

The evidence submitted by National in support of its motion for summary judgment leads to only one reasonable conclusion: that it was the intention of the parties to convey the ranch to the Goldbergs as joint tenants, and that the Goldbergs knowingly accepted the joint tenancy interests therein. To the extent that the judgment on this issue rests upon the district court's interpretation of Arizona's law regarding the sufficiency of the evidence to defeat the community property presumption, it must be given deference and we will reverse on that basis only if the interpretation is clearly wrong. *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980). Republic has cited no Arizona decisions, nor have we found any, that would suggest a reversal on this issue.

### C. The Fraudulent Conveyance Issue

■ The other alternative expressed by this court in the first appeal by which National's prima facie case could be rebutted was for Republic to invalidate the transfer from FSLIC to the Goldbergs as a fraudulent conveyance. The applicable section of Arizona's Fraudulent Conveyance Act provides that:

"Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent."

Ariz.Rev.Stat. § 44–1005. National moved for summary judgment on this issue, maintaining that the conveyance was supported by fair consideration. The Act provides that fair consideration is given for property, "When in exchange for such property, . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." Ariz.Rev.Stat. § 44–1003(1).

Republic's debtor, FSLIC, received the property in question from the Goldbergs in exchange for a note that Republic characterizes as a "surplus" note under the Arizona Insurance Code. In pertinent part, the statute provides that:

"A domestic stock or mutual insurer may borrow money to defray the expenses of its organization, provide it with surplus funds, or for any purpose required by its business, upon a written agreement that such money is required to be repaid only out of the insurer's surplus in excess of that stipulated in such agreement. The agreement may provide for interest at the rate agreed upon but not exceeding six per cent per annum, which interest shall or shall not constitute a liability of the insurer as to its funds other than such excess of surplus, as stipulated in the agreement.

"Money so borrowed, together with the interest thereon if so stipulated in the agreement, shall not form a part of the insurer's legal liabilities except as to its surplus in excess of the amount thereof stipulated in the agreement, or be the basis of any set-off, but until repaid, financial statements filed or published by the insurer shall show as a footnote thereto the amount thereof then unpaid together with any interest thereon accrued but unpaid."

Ariz.Rev.Stat. § 20–725(A) and (B). Republic contends that unless FSLIC had surplus in excess of the amount stipulated in the note, there was no legal liability that could supply consideration for the reconveyance of the ranch to the Goldbergs. We disagree.

With the exception of the final paragraph, the terms specified in FSLIC's note fairly closely track the language of Ariz. Rev.Stat. § 20–725(A). However, the last paragraph of the note recites that the holders of the note "may at any time require the reconveyance" of the ranch by FSLIC, and that such reconveyance "shall constitute full satisfaction of the obligations under this note." By its clear and unambiguous language, the final paragraph of the note provided for a separate and distinct method of payment. The district court concluded that the inclusion of this alternate method of payment disqualified the note

from the special treatment afforded statutory "surplus" notes. The Arizona courts have not addressed this issue and we do not think that the district court's interpretation of the statute is clearly wrong. Therefore, we affirm the district court in holding that the reconveyance of the ranch to the Goldbergs in accordance with the express terms of the note was supported by fair consideration.

### D. Ruth Goldberg's Interest

Although we affirm the district court's determination on the two issues framed by National's motion for summary judgment, we cannot affirm the judgment entirely. On the record now before the court, we affirm the district court's judgment quieting title in National as to Philip Goldberg's interest in the subject property. However, we find the record insufficient to support the relief granted as it pertains to Ruth Goldberg's interest in the ranch.

It must be remembered that in the prior appeal, this court held that National had established a prima facie case for relief by introducing the deeds from FSLIC to the Goldbergs and then to others, the Arizona money judgment against Philip Goldberg, the sheriff's deed to National of Philip Goldberg's interest in the property, and the judgment quieting National's title as against the Goldbergs and their grantees. Therefore, the only evidence affecting Ruth Goldberg's interest was the Arizona quiet title judgment. However, the admission of that judgment in evidence was sufficient merely to raise a presumption that as between National on the one hand, and the Goldbergs and their grantees on the other, National has title to the property. It was specifically held that the judgment is not evidence that Ruth Goldberg's interest is void as a fraud on Philip Goldberg's creditors. In remanding the case to the district court for further trial, this court set forth two examples of how Republic might rebut National's prima facie case and the presumption raised by National's state court judgment. The alternatives mentioned were examples only and were not intended to foreclose other possibilities.

Republic has argued that because National's prima facie case could have been rebutted by showing that Ruth Goldberg had a valid community property interest in the ranch, for similar reasons it may also be rebutted in part by proof that Ruth Goldberg had a valid joint tenancy interest in the property. We think the argument is well taken.

■ As a general rule, a creditor of an individual joint tenant may reach that tenant's interest in the property held in joint tenancy, and the lien of a judgment against a joint tenant attaches to the interest of *only* the debtor joint tenant. 48A C.J.S. Joint Tenancy § 32 (1981). A review of the case law convinces us that Arizona follows this general rule. *See, e.g., Smith v. Tang,* 100 Ariz. 196, 412 P.2d 697 (1966); *Collier v. Collier,* 73 Ariz. 405, 242 P.2d 537 (1952); *Cooley v. Veling,* 19 Ariz.App. 208, 505 P.2d 1381 (1973); *Musker v. Gil Haskins Auto Leasing, Inc.,* 18 Ariz.App. 104, 500 P.2d 635 (1972); *Graham v. Allen,* 11 Ariz.App. 207, 463 P.2d 102 (1970).

■ Above, we held the record evidence sufficient to establish that FSLIC conveyed the ranch to Philip and Ruth Goldberg as joint tenants. At best, the presumption arising from National's state court quiet title judgment presents a fact question, but it is wholly inadequate to support a summary judgment as to Ruth Goldberg's apparent interest in the property. Consequently, the case must be remanded for further proceedings on this limited issue.

We note an apparent anomaly in our decision. The obvious question is how can Republic claim any title to the property if the conveyance from FSLIC to the Goldbergs was not fraudulent as to Republic? The answer to the inquiry lies in the procedural posture of this case and the precise nature of our holding on the fraudulent conveyance issue. We have held merely that on the record before us in this action between these two parties, National was entitled to a summary judgment on the fraudulent conveyance issue. This holding does not negate the fact that Republic had earlier obtained a judgment setting aside the

FSLIC-to-Goldbergs conveyance as a fraud on it, and quieting its title to the property against the Goldbergs and their grantees. Republic was put to the task of again establishing the fraudulent nature of that conveyance in this case because National was not bound by Republic's prior judgment and because National had established a prima facie case demonstrating a superior claim of title to the ranch. National's prima facie case of superior title has now ripened into a judgment as to Philip Goldberg's interest in the property. However, it will not be incumbent upon Republic to prove the fraudulent conveyance against National unless and until National can establish a superior claim to that portion of the title to the property represented by Ruth Goldberg's joint tenancy interest.

## VI. MOTION FOR RELIEF FROM JUDGMENT

In this appeal, Republic has presented several arguments that have not been addressed in this decision. National has consistently and rather vigorously objected to our consideration of those arguments, contending that they were not raised in the district court below. In its reply brief, Republic informed us that "every basic argument" presented on appeal was set forth in its Rule 60(b)(1) motion for relief from judgment. Republic has appealed the district court's denial of that motion.

The denial of a Rule 60(b) motion is reviewed for an abuse of discretion. *Browder v. Director, Department of Corrections*, 434 U.S. 257, 263 n.7, 98 S.Ct. 556, 560 n.7, 54 L.Ed.2d 521 (1978); *United States v. Russell*, 578 F.2d 806, 807 (9th Cir. 1978). Moreover, before the underlying merits of a motion brought under Rule 60(b)(1) can be reached, the movant must show mistake, inadvertence, surprise, or excusable neglect. *Securities and Exchange Commission v. Seaboard Corp.*, 666 F.2d 414, 416 (9th Cir. 1982). Republic failed to do so.

Republic's motion requested relief from the judgment by reason of "[m]istake, inadvertence, surprise or excusable neglect, as represented by failure to present to the Court all issues of conflicting fact...."

The cause of this failure was made clear on the first page of Republic's supporting memorandum: "Because Republic ... had previously obtained a ruling from Judge Copple that evidence presented in [its prior quiet title suit] constituted prima facie proof of a fraudulent conveyance, it was therefore unexpected that this court would rule the opposite in a summary judgment proceeding." This explanation falls short of meeting the prerequisite showing for relief pursuant to Rule 60(b)(1). The party opposing a motion for summary judgment need present only so much of its case as is sufficient to defeat the motion and may preserve the remainder for trial. We are of the opinion, however, that when this approach is utilized, the opposing party must bear the risk of misevaluating the sufficiency of its response to the motion. This is especially true in this age when the courts are plagued by overcrowded dockets. Our judicial system cannot afford multiple and repetitious hearings and appeals resulting from a litigant's erroneous expectations of success. We affirm the district court's denial of the motion.

## VII. CONCLUSION

National scored a knockdown, but Republic was saved by the bell. We affirm the district court's judgment as it relates to Philip Goldberg's interest in the ranch. We find the record insufficient to sustain the summary judgment as it relates to Ruth Goldberg's interest in the ranch, and remand for further proceedings on that issue. We affirm the district court's denial of Republic's motion for relief from judgment.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.