766 F.2d 1316
 The PEOPLE OF the STATE OF CALIFORNIA ex rel. John VAN DE
KAMP, Attorney General of the State of California,
Plaintiff-Appellee,
v.
The TAHOE REGIONAL PLANNING AGENCY, a Separate Entity
Created by Bi-State Compact, Defendant,
and
Tahoe Truckee Sanitation Agency, Intervenor/Appellant.
 No. 84-2433.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 15, 1985.
Decided July 22, 1985.
 
 John K. Van de Kamp, Atty. Gen., N. Gregory Taylor, Asst. Atty. Gen., Richard M. Skinner, Deputy Atty. Gen., Sacramento, Cal., E. Clement Shute, Shute, Mihaly & Weinberger, San Francisco, Cal., for plaintiff-appellee.
 John C. Weidman, Placerville, Cal., for intervenor-appellant.
 Appeal from the United States District Court for the Eastern District of California.
 Before ANDERSON and CANBY, Circuit Judges, and NIELSEN, District Judge.*
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 This opinion and appeal is a companion to the opinion of Judge Leland C. Nielsen in appeal 766 F.2d 1308 filed simultaneously herewith. For the procedural history, additional facts and standard of review, the reader is referred to Judge Nielsen's opinion.
 
 I. Timeliness of Appeal
 
 2
 The Tahoe Truckee Sanitation Agency's (TTSA) motion to modify the preliminary injunction was denied from the bench on July 25, 1984. Its notice of appeal was filed on August 31, 1984, outside the 30-day limitation period. See Fed.R.App.P. 4(a)(1). Here TTSA delayed filing its notice of appeal pending the entry of a formal written order denying its motion to modify. Such an order was never entered.
 
 
 3
 We find that TTSA's appeal is timely under the "unique circumstances" doctrine announced in Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261 (1962), and followed by this court in National Industries, Inc. v. Republic National Life Insurance Co., 677 F.2d 1258, 1264 (9th Cir.1982). In the latter case, the appellant, in reliance on the district court's grant of an extension, filed an appeal after the 30-day limit had expired. The court then vacated the extension. On review, this court found the appeal timely, stating, "the 'unique circumstances' of this case justify the exercise of our jurisdiction to review the merits...." National Industries, 677 F.2d at 1264. Although the facts here are somewhat different, they are just as "unique," and as such, fit within the ambit of the doctrine.
 
 II. Motion to Shorten Time
 
 4
 On June 7, 1984, TTSA filed a motion to intervene. In an attempt to participate in the June 11, 1984, hearing on the preliminary injunction, TTSA requested an order shortening time for the hearing on its motion to intervene. On June 11, the court denied the motion for an order shortening time so that the hearing on the preliminary injunction would not have to be postponed to allow further briefing.
 
 
 5
 The court did not err in denying the motion. The TRO had been in effect since May 1, and the court was legitimately concerned that the preliminary injunction hearing be accomplished without further delay.
 
 
 6
 TTSA contends that it was prejudiced by the denial because it would have objected to the admission of certain of the plaintiffs' affidavits. The court, however, based its findings substantially on the declarations contained in the Compact, the admissibility of which is not in question, and on the research of Dr. Goldman. TTSA's primary objection to Dr. Goldman's evidence was that it did not focus exclusively on the proposed TTSA service area development. This objection, however, goes to the weight of the evidence, not its admissibility. Finally, the court took into consideration any possible prejudice to TTSA, stating that it would retain equity jurisdiction to modify, if necessary, any order which might affect TTSA's interest.
 
 
 7
 III. Motion to Modify the Preliminary Injunction
 
 
 8
 TTSA argues that the environment will sustain no irreparable injury if the injunction is modified to permit limited development in the TTSA service area. In support of its position, TTSA states that it is bound by a state court judgment concerning residential development in its service area which (1) prohibits development in stream environment zones, (2) prohibits new subdivisions, and (3) requires that all development must conform to the coverage limitations of the Bailey report.
 
 
 9
 The district court did not abuse its discretion in denying TTSA's motion to modify the injunction. If TTSA were allowed to proceed subject only to conformance with the Bailey report, development within its service area would be permitted without showing that the numerous other thresholds, such as air quality, vegetation preservation, noise, recreation, and scenic resources, were not exceeded. The importance of satisfying all the threshold requirements is demonstrated by the Tahoe Regional Planning Agency's resolution adopting the thresholds. Resolution No. 82-11. Moreover, it is not clear that further development in the TTSA service area will not affect water quality. Resolution No. 82-11 states that the water quality threshold "is currently being exceeded and will likely continue to be exceeded until some time after full implementation of the loading reductions prescribed by the thresholds," and it calls for a reduction of nutrient loading from all sources. Id. at Exhibit A, p. 1.
 
 
 10
 TTSA's state court judgment allows 3500 residential permits, and TTSA contemplates construction on up to 150 lots per year. There is evidence that the space and hot water heating of the proposed new residences would result in increased oxide of nitrogen emissions. This in turn, would cause an increase in nitrogen deposits to Lake Tahoe, creating further algae growth and water quality decline. Furthermore, the evidence also suggests that the increase in residences presumably would bring an increase in woodburning stoves, fireplace and automobile emissions, which would, at the least, have an effect on the air quality.
 
 IV. Financial Hardship
 
 11
 TTSA issued revenue bonds anticipating repayment from connection charges to be imposed on new customers from new development. It claims financial hardship in that the preliminary injunction halting new construction will cause it to lose $400,000 per year in new sewer connection fees, thereby preventing it from paying off its bonds.
 
 
 12
 The district court did not err in declining to weigh TTSA's claim of potential revenue loss in its balancing of the hardships. Mere financial injury will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation. Goldie's Bookstore, Inc. v. Superior Court of the State of California, 739 F.2d 466, 471 (9th Cir.1984). Here, TTSA has other revenue sources from which to make its bond payments while the preliminary injunction is in force. Thus, TTSA is not in danger of default, and its injury would be easily calculable and compensable in damages. See Goldie's, 739 F.2d at 471-72.
 
 
 13
 Contrary to TTSA's assertion, the district court did balance TTSA's showing of hardship against that of the plaintiffs. After stating that it could not properly consider TTSA's potential financial loss, the court inquired of TTSA whether it would be injured in any other way. TTSA responded that the people it represented had been led to believe they would be able to construct homes on their lots, and the court stated it had taken that into consideration in reaching its decision.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The Honorable Leland C. Nielsen, United States District Judge, Southern District of California, sitting by designation