56 F.3d 75
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Dagmar URBAN, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70520.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1995.
Decided May 22, 1995.
 
 1
 Petition to Review a Decision of the Immigration and Naturalization Service, INS No. Aul-vqv-uhl.
 
 INS
 
 2
 DISMISSED.
 
 
 3
 Before: NORRIS, WIGGINS, and FERNANDEZ, Circuit Judges
 
 
 4
 MEMORANDUM*
 
 OVERVIEW
 
 5
 Dagmar Urban, a native and citizen of West Germany, admitted she was deportable under Section 241(a)(2)(B) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. Sec. 1251(a)(2)(B) (Supp. 1994), because she had been convicted of selling methamphetamine. She requested a waiver of inadmissibility pursuant to Section 212(c) of the Act. 8 U.S.C. Sec. 1182(c). An Immigration Judge ("IJ") conducted a hearing on December 7, 1990, and denied her request. Urban appealed the IJ's ruling to the Board of Immigration Appeals ("BIA"). The BIA adopted the opinion of the IJ on February 17, 1993, dismissing the appeal.
 
 
 6
 Urban appeals that decision to this court. Although her notice of appeal was not timely received per 8 U.S.C. Sec. 1105, she argues that we have jurisdiction under the doctrine of "unique circumstances." We disagree, and therefore dismiss her appeal.
 
 DISCUSSION
 
 7
 a. Unique Circumstances
 
 
 8
 The BIA's decision was filed on February 17, 1993. On March 16, 1993, Urban (using the name of her husband, Manry), wrote a letter to the BIA requesting an extension of time for filing her appeal. This did not comport with the proper statutory procedure, because 8 U.S.C. Sec. 1105a(a) and 28 U.S.C. Sec. 2344 give the court of appeals exclusive jurisdiction to review the BIA's deportation order. The BIA received Urban's letter on March 22, and responded with a letter on March 24. In that letter, the BIA told Urban that they could not find any record of her case. The Board stated that its records were retrievable primarily by the alien's registration number ("A number"), which she had not provided. A search by last name also turned up nothing (because in her letter, Urban had used her husband's last name). On April 3, 1993, Urban re-sent the letter to the BIA, with a cover letter containing her A number and her Urban surname. The BIA received this letter on May 10, 1993. On May 18, 1993, it sent Urban a letter stating that appeals from the Board's decisions were handled by the Ninth Circuit, and included the address of the clerk of this court. On June 1, 1993, Urban sent a letter to the Ninth Circuit Clerk's Office, requesting an extension for filing her appeal. That correspondence, even assuming it satisfies the requirements for filing an appeal, did not arrive until June 8, 1993, after expiration of the 90-day period mandated by 8 U.S.C. Sec. 1105a(a)(1):
 
 
 9
 a petition for review may be filed not later than 90 days after the date of the issuance of the final deportation order, or, in the case of an alien convicted of an aggravated felony, not later than 30 days after the issuance of such order.
 
 
 10
 The 90-day deadline had expired on May 17, 1993.
 
 
 11
 Urban argues that she relied upon the March 24, 1993 letter from the BIA as an indication that she was pursuing her appeal through the proper channels, and that this court should consider her notice constructively filed on that date, under the doctrine of unique circumstances. This we cannot do.
 
 
 12
 The Supreme Court has clearly stated that the doctrine of unique circumstances applies "only where a party has performed an act which, if properly done, would postpone the deadline for filing [her] appeal and has received specific assurance by a judicial officer that this act has been properly done." Osterneck v. Ernst & Whinney, 489 U.S. 169, 178 (1988) (emphasis added). Under this standard, Urban's claim fails. First, her act -- asking the BIA for an extension -- was not an act which, if properly done, could have postponed her deadline. More fundamentally, however, the March 24 letter from the BIA cannot possibly be construed as "specific assurance" that Urban had properly requested an extension. The letter simply stated that the BIA had no idea who Urban was. It stated that without her A number her file could not be located, and that a backup search using her last name also was unfruitful.[1] This is nothing like the sort of judicial action that triggers the unique circumstances doctrine. In Thompson v. INS, 375 U.S. 384 (1964); National Industries, Inc. v. Republic Life Insurance Co., 677 F.2d 1258, 1264 (9th Cir. 1982); and Hernandez-Rivera v. INS, 630 F.2d 1352, 1353, 1355 (9th Cir. 1980), for example, lower courts had made explicit, erroneous findings, upon which the parties reasonably relied in determining the deadline for filing their appeals.[2] In the instant case, Urban could not reasonably have relied upon an explicit finding of the BIA that she believed affected her deadline to appeal -- the BIA never made an explicit finding. Urban's assertion that the March 24 letter "not only lulled, but actively encouraged her inaction," is simply not supported by the letter's contents. The more apposite language from Urban's brief is her concession that "a total absence of notice concerning the time for filing an appeal would probably not constitute an affirmative misrepresentation for purposes of the unique circumstances doctrine." (emphasis added).
 
 
 13
 Further, both Vlaicu v. INS, 998 F.2d 758 (9th Cir. 1993), and Shamsi v. INS, 998 F.2d 761 (9th Cir. 1993), upon which Urban relies, are distinguishable. In Shamsi, the INS had provided an appeal form to the applicant that was completely misleading as to where her appeal had to be filed. The form clearly and repeatedly indicated that her appeal was to be filed with the INS Office, rather than the (proper) Office of the Immigration Judge. Moreover, the regulations concerning the proper place to file the appeal were also confusing. The court ruled that the applicant "should not be penalized for complying with [the form and the regulation]." 998 F.2d at 763. The facts of Vlaicu are very similar. The IJ in that case sent a letter to the applicant that was misleading as to the deadline for an appeal. Moreover, as the reviewing panel noted, "[n]or would petitioners have been quickly disabused of their misimpression if they had consulted the regulations, because the regulations do not speak with one voice." 998 F.2d at 760. In the present case, in contrast, not only is the letter from the BIA not misleading, but neither are the applicable rules. See 8 U.S.C. Sec. 1105a(a); 28 U.S.C. Sec. 2344.[3]
 
 
 14
 b. Urban's Pro Se Status
 
 
 15
 We also cannot ignore the untimeliness of Urban's filing simply because she was acting pro se while pursuing her appeal. The case she cites for the proposition that pro se appellants should be granted special leeway, Houston v. Lack, 487 U.S. 266 (1988), is readily distinguishable. As this circuit recently noted in Nigro v. Sullivan, 40 F.3d 990, 994-95 (1994), the Supreme Court in Houston relied heavily on the fact that the applicable rules in that case, 28 U.S.C. Sec. 2107 and Fed. R. App. P. 3(a) and 4(a)(1), governing the filing of criminal appeals, did not specify at what point a notice was deemed filed. See 487 U.S. at 272-75. In the present case, on the other hand, the statutory framework for filing appeals from administrative decisions is not ambiguous. Federal Rules of Appellate Procedure 15(a) and 25(a) clearly state that a notice is considered filed when it is received by the clerk of the court. As the Nigro panel concluded: "Houston ... paint[s] the pro se prisoner in a sympathetic light. We cannot in the name of sympathy rewrite a clear procedural rule, however." 40 F.3d at 995.
 
 CONCLUSION
 
 16
 For the foregoing reasons, we dismiss Urban's appeal for lack of jurisdiction.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Adding to the evidence that the BIA had no idea who they were dealing with is the fact that they labeled her letter to them a letter concerning a visa petition proceeding, rather than a deportation order
 
 
 [2]
 It is true that in California v. Tahoe Regional Planning Agency, 766 F.2d 1316 (9th Cir. 1985), the court did not affirmatively do something misleading. Nevertheless, that case, too, presents a far different fact pattern than the present one. In that case, a party waited for the court to enter a formal written order denying its motion to modify, before pursuing its appeal. The court never did enter the order. Moreover, Tahoe Regional Planning Agency predates the admonition of the Supreme Court in Osterneck that "specific assurance" from a judicial officer is a prerequisite for the unique circumstances doctrine
 
 
 [3]
 Because we lack jurisdiction even if Urban had 90 days in which to file her appeal, we need not reach the question of whether, as the government suggests, she only had 30 days to file due to a subsequent drug trafficking conviction. See 8 U.S.C. Sec. 1105a(a)(1) ("a petition for review may be filed not later than 90 days after the date of the issuance of the final deportation order, or, in the case of an alien convicted of an aggravated felony, not later than 30 days after the issuance of such order")