Thanh Quoc NGUYEN; Loi Pham; Hien Van Tieu, Plaintiffs–Appellants,

v.

SOUTHWEST LEASING AND RENT-AL, INC.; Otium Corporation, dba USA Rent–A–Car, Defendants,

and

Yokohama Tire Corp.; Yokohama Rubber Company Ltd., Defendants–Appellees.

Thanh Quoc Nguyen; Loi Pham; Hien Van Tieu, Plaintiffs–Appellees,

v.

Southwest Leasing and Rental, Inc.; Otium Corporation, dba USA Rent–A–Car, Defendants,

and

Yokohama Tire Corp.; Yokohama Rubber Company Ltd., Defendants–Appellants.

Nos. 00–57154, 00–57218.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2002.

Filed March 4, 2002.

John F. Fay, Park City, Utah, for the appellants-cross-appellees.

Hall R. Marston, Sedgwick, Detert, Moran & Arnold, Los Angeles, CA, for the appellees-cross-appellants.

Before TROTT, THOMAS and WARDLAW, Circuit Judges.

## OPINION

THOMAS, Circuit Judge.

In this case, we must decide if, and to what extent, oral notice of entry of judgment constitutes "notice" within the meaning of Federal Rule of Appellate Procedure 4(a)(6). Under the circumstances presented by this case, we conclude that the oral notice given was insufficient to commence the rule's fourteen-day time period. Thus, we conclude we have appellate jurisdiction over the instant appeal, which we affirm on the merits.

I

Thanh Quoc Nguyen, Loi Pham, and Hien Van Tieu (collectively, "Plaintiffs") were severely injured when the tread from the rear tire of their rented Toyota Corolla "peeled" off, causing the car to skid into the median and roll over several times. Plaintiffs sued the manufacturer of the tire, Yokohama Rubber Company, Ltd. of Japan, and the manufacturer's southern

California retailer, Yokohama Tire Corporation (collectively, "Yokohama"). Plaintiffs also sued the owner of the car and the rental car agency. The latter two defendants failed to defend, and their defaults were entered. After a five-day bifurcated trial limited to liability, the jury returned a verdict in favor of Yokohama. Plaintiffs appeal.

## II

Yokohama contends that no timely notice of appeal was filed and therefore we lack jurisdiction.

## A

After trial, the court entered judgment on the jury's verdict only as to Yokohama, not the rental car agency or car owner. The default of these parties had been previously entered, but no default judgment had been taken. Nevertheless, Plaintiffs appealed the judgment.

While their first appeal was pending, Plaintiffs proceeded to seek entry of default judgment against the remaining defendants in the district court. The district court denied Plaintiffs' request for a trial and instead ordered Plaintiffs to submit declarations regarding damages. Plaintiffs submitted declarations and various other pleadings, as well as a request for a decision. In response, the court requested the submission of additional evidence, which Plaintiffs provided. Subsequently, we dismissed Plaintiffs' pending appeal for lack of appellate jurisdiction, noting that no final judgment had been obtained for the action as a whole. The district court spread our mandate on April 14, 2000.

On April 25, 2000, the district court granted Plaintiffs' motion for default judgment and awarded Plaintiffs over $5 million in damages. The judgment was entered on the docket on April 27, 2000, and the entry states that notices were sent to counsel. Plaintiffs' counsel asserts, and

the district court later found, that he did not receive a copy. This conclusion is supported by the fact that on June 22, 2000, Plaintiffs filed another request for oral argument on their motion for default judgment. Yokohama's counsel received a copy of the default judgment on May 1, 2000. Yokohama did not serve the judgment on Plaintiffs.

On July 12, 2000, still unaware of the judgment, Plaintiffs' counsel telephoned the district judge's courtroom clerk. The clerk called him back the next day and told him over the telephone that the default judgment had been entered on April 27, 2000. She verified that court records contained counsel's correct address. Counsel asked that the clerk send a copy of the judgment to him, but the clerk replied that counsel had to submit his request to the clerk of court's office in writing. Plaintiffs' counsel wrote to the clerk of court the next day.

Plaintiffs' counsel then made arrangements with an attorney service to go to the courthouse to look for a copy of the judgment. On July 28, 2000, an employee of the attorney service faxed a copy of the default judgment to Plaintiffs' counsel. On August 4, 2000, Plaintiffs filed a motion pursuant to Federal Rule of Appellate Procedure 4(a)(6) to reopen the period for filing a notice of appeal. In a declaration submitted in connection with this motion, Plaintiffs stated that as of August 22, 2000, the court's case file did not contain an actual copy of the judgment, although the clerk could access it electronically.

On November 22, 2000, the district court granted Plaintiffs' motion. Pursuant to Rule 4(a)(6), Plaintiffs then had 14 days in which to file a notice of appeal. They filed a notice of appeal on December 5, 2000, the fourteenth day.

B

■ Yokohama contends that the district court's grant of relief under Rule 4(a)(6) was in error. We review the grant or denial of a motion brought pursuant to Rule 4(a)(6) for an abuse of discretion. *See Mitchell v. Burt Vetterlein & Bushnell PC (In re Stein)*, 197 F.3d 421, 424 (9th Cir.1999).

■ [1] Failure to file a timely notice of appeal deprives the court of appeals of jurisdiction. *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978). Because of the perception that this rule led to harsh results when parties did not receive timely notice of the entry of judgment, such as when the clerk makes an error in mailing, Federal Rule of Appellate Procedure 4 was amended in 1991 to create a limited exception. *See* Fed. R.App. P. 4(a)(6) advisory committee's note (1991); *see also In re Stein*, 197 F.3d at 424. Pursuant to Rule 4(a)(6), a district court may reopen the time for filing a notice of appeal when the court finds that:

(1) the motion is filed either (a) within 180 days after the judgment is entered, or (b) within seven days after the moving party receives notice of the entry;

(2) the party seeking to appeal was entitled to notice of the entry of judgment;

(3) the party did not receive notice from the district court or from any party within 21 days after entry; and

(4) no party would be prejudiced by reopening the period.

*See* Fed. R.App. P. 4(a)(6)(A)-(C). By granting Plaintiffs' motion, the district court indicated that it found all of these requirements to have been met.

Yokohama takes issue only with the district court's finding on the first factor. Yokohama argues that Plaintiffs received "notice," within the meaning of the rule, when their attorney talked to the court's clerk on the phone and learned that a judgment had been entered, rather than when the attorney finally received a written copy of the judgment several weeks later. Thus, Yokohama argues that Plaintiffs' Rule 4(a)(6) motion was impermissibly filed more than seven days after Plaintiffs' attorney received notice of the entry of judgment.

■ At the outset, it is fairly clear that Fed.R.Civ.P. 77(d)[1] contemplates that the original notice of entry of judgment be in writing, because it requires the clerk of court to serve the notice of entry of judgment by mail and further allows the prevailing party to "serve a notice of such entry in the manner provided in Rule 5 for the services of papers." Fed.R.Civ.P. 77(d). According to the Advisory Committee, the rationale underlying allowing parties to serve the notice was to "place a burden on prevailing parties who desire certainty that the time for appeal is running" and thus allow such parties to "take the initiative to assure that their adversaries receive effective notice." Fed.R.Civ.P. 77(d) advisory committee's note. Thus, there is little doubt that Rule 77(d) con-

---

1. As it existed at the time judgment was entered, Fed.R.Civ.P. 77(d) provided: "**Notice of Orders or Judgments.** Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Any party may in addition serve

a notice of such entry in the manner provided in Rule 5 for the service of papers. Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure."

templates that the original notice of entry of judgment be in writing.

However, at least at first glance, Fed. R.App. P. 4(a)(6), is not as clear, because it speaks only of "notice," without describing the form of the notice required. Our circuit has described the import of Fed. R.App. 4(a)(6) in terms of "actual notice," without expressly deciding whether oral notice is sufficient. *See Vahan v. Shalala*, 30 F.3d 102, 103 (9th Cir.1994) (noting that the Rule 4(a)(6) motion was untimely regardless of whether the time was counted from the receipt of oral or written notice, thus not reaching the issue).

■ The majority of our sister circuits require some form of written notice. *See Bass v. United States Dep't of Agric.*, 211 F.3d 959, 963 (5th Cir.2000); *Scott–Harris v. City of Fall River*, 134 F.3d 427, 433–34 (1st Cir.1997) (holding that written notice is required because of Federal Rule of Civil Procedure 77(d), the Advisory Committee Notes, and the desire to create an easily administrable rule), *rev'd on other grounds sub nom. Bogan v. Scott–Harris*, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998); *Avolio v. County of Suffolk*, 29 F.3d 50, 53 (2d Cir.1994) ("[T]he notice contemplated by this rule is written notice; an oral communication simply is not sufficient to trigger the relevant time periods."). The Eighth Circuit held that actual notice of the entry of the judgment is sufficient to trigger Rule 4(a)(6)(A), without deciding specifically whether oral notification is sufficient. *See Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 464 (8th Cir.2000).

There are good reasons for requiring written notice, not the least of which is that "writings are more readily susceptible to proof than oral communications." *Scott–Harris*, 134 F.3d at 434. This is particularly true given the possibilities of mistakes in oral communication in busy clerk's offices. It is also doubtful that the drafters of the rule considered passing remarks in casual conversation between attorneys as constituting adequate notice of the entry of judgment. Allowing proof of notice by anecdotal evidence would thwart the purpose of the rule, which is to ensure that the losing party understands that judgment has, in fact, been entered so that appropriate action may be taken. Learning that judgment *may* have been entered, rather than that it *has* been entered, normally will trigger a different response.

For these reasons, we agree with our sister circuits that oral communication of notice of entry of judgment alone is ordinarily insufficient to trigger the time periods running under Rule 4(a)(6). However, we have recognized in the past that there are other types of notice that are the functional equivalent of written notice. For example, in *Nunley v. City of Los Angeles*, 52 F.3d 792 (9th Cir.1995), the attorney for a party had not received notice of entry of judgment notwithstanding several trips to the courthouse to examine the file and docket. *Id.* at 793–94. After some time, the attorney was able to inspect the docket and saw therein the entry of judgment. *Id.* at 794. The actual judgment was inexplicably still not in the court file. *Id.* Six days later, the attorney filed an *ex parte* motion for an extension of time to file an appeal. *Id.* Several weeks later, the attorney filed another motion seeking relief. *Id.* We held that only the original *ex parte* motion could be the basis of relief, stating: "Because Nunley admits that she received actual notice on May 20, 1993, the district judge only had authority ... to consider Nunley's May 26, 1993 *ex parte* application, which was filed within 7 days of actual notice, and not her June 9, 1993 motion ... which was untimely...." *Id.* Similarly, in *In re Stein*, we stated that when counsel discovered on April 9 and 10, 1998 that orders had been entered earlier and then filed a Rule 4(a)(6) motion on

April 24, 1998, the motion was not filed within the seven-day period. *In re Stein,* 197 F.3d at 423, 426.

Thus, although we have not been as rigid as our sister circuits as to the form of communication, we have only embraced a non-written form of notice that is legitimate and unambiguous. There are good reasons for not limiting the rule to pure written communication. Although Fed. R.Civ.P. 77(d) and Fed. R.App. P. 4(a)(6) should be read *in pari passu, Scott-Harris,* 134 F.3d at 433, it is significant that the drafters of Fed. R.App. P. 4(a)(6) chose not to add a modifier to the word "notice." *Cf. A-1 Ambulance Serv., Inc. v. California,* 202 F.3d 1238, 1244–45 (9th Cir.2000) (noting significance of absent modifiers in statutory construction). Further, in circumstances such as *Nunley,* where the attorney personally views the docket, or in *In re Stein,* where the attorney admits actual notice, requiring a written communication as a time period trigger makes little sense. In those situations, the disappointed party has already been apprised of the facts necessary to take action.

■ [8] It is also important to re call that it is the entry of the judgment itself that commences the time running for the filing of a notice of appeal, not the notification of judgment entry. *See* Fed. R.App. P. 4(a)(1)(A). As the Advisory Committee noted:

> Rule 77(d) as amended makes it clear that notification by the clerk of the entry of a judgment has nothing to do with the starting of the time for appeal; that time starts to run from the date of entry of judgment and not from the date of notice of the entry. Notification by the clerk is merely for the convenience of litigants.

Fed.R.Civ.P. 77(d) advisory committee's note. "Implicit in this rule is the notion that parties have a duty to inquire periodically into the status of their litigation." *Latham v. Wells Fargo Bank,* 987 F.2d 1199, 1201 (5th Cir.1993) (citing *Jones v. Estelle,* 693 F.2d 547, 549 (5th Cir.1982)).

■ Thus, consistent with our prior case law and the structure of the rules, we decline to confine the concept of notice under Rule 4(a)(6) to written communication alone; however, consistent with the philosophy expressed by our sister circuits, the quality of the communication must rise to the functional equivalent of written notice to satisfy Rule 4(a)(6)'s notice requirement. This means that the notice must be specific, reliable, and unequivocal.

The district court is in a superior position to assess which communications are the functional equivalent of written notice. Indeed, the responsibility for determining predicate compliance with the rule is vested in the district court under Fed. R.App. P. 4(a)(6). Not only is the district court better able to gauge the credibility of the parties, but the district court is also familiar with the usual and accustomed practices of the clerk of court within the specific district.

■ In this instance, we conclude that the district court did not abuse its discretion in deciding that Plaintiffs did not receive the required notice when their counsel first spoke with the court's clerk. Although Plaintiffs' counsel learned orally from the courtroom clerk that the electronic record indicated that a judgment had been entered, the clerk declined to send written notice without a formal written request from Plaintiffs. Viewing the actual judgment was important in this case, because Plaintiffs had previously prematurely appealed a judgment that did not extend to all parties. The record is silent regarding whether the clerk informed Plaintiffs' counsel against which specific parties the judgment had been entered.

After failing to receive written notice from the clerk, Plaintiffs' counsel took independent steps to procure the judgment and first received the written notice on July 28, 2000. Plaintiffs filed their Rule 4(a)(6) motion on August 4, 2000, within seven days, and it thus was timely. The record further reveals that neither the judgment, nor the notice of entry of judgment, was contained in the actual court file as of August 20, 2000. Thus, even if counsel had inspected the court file daily, he would not have learned of the entry of judgment. Accordingly, the district court did not abuse its discretion when it granted Plaintiffs' motion to reopen the time for filing an appeal, and we have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

### III

Although we agree with Plaintiffs that this case is properly before us, we conclude that the district court did not abuse its discretion in allowing Yokohama's employee to testify or by admitting exhibits in support of his testimony.

Prior to trial, the court granted Plaintiffs' motion *in limine* to exclude "evidence regarding industry custom and practice, state of the art and compliance with government standards and regulations and … recall evidence" during the liability phase of trial. This ruling was based on Plaintiffs' withdrawal of their negligence claims and sole reliance on their strict products liability claim. In support of this claim, Plaintiffs' expert opined at trial that the accident was due to a manufacturing defect. However, the expert went further, and identified several possible errors and deficiencies in the manufacturing process that could have caused the defect. After Plaintiffs rested their case, the court granted Yokohama's motion to dismiss the claims in so far as they were based on

design defects. Thus, from that point forward, the existence of a manufacturing defect was the only issue for the jury.

As part of the defense case, Yokohama presented testimony and offered exhibits concerning the quality control precautions taken in the tire manufacturing process. Plaintiffs' counsel objected to such testimony and the exhibits, stating that he believed it fell within the scope of the order granting the motion *in limine*. However, the court overruled the objection, agreeing with defense counsel that Plaintiffs had opened the door to this testimony by eliciting the list of possible manufacturing problems from their own expert.

■■■■ The district court did not abuse its discretion in allowing the testimony on this basis. Under the doctrine of curative admissibility, "the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir.1988) (citations omitted); *see also Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 (9th Cir.1987) (holding that a party could not complain about redirect testimony on a topic the party had itself addressed in cross-examination after the court ruled such testimony inadmissible); *Burgess v. Premier Corp.*, 727 F.2d 826, 834 (9th Cir.1984) (holding that a party could not claim error from a witness's redirect testimony consisting of a legal conclusion regarding "how and by whom" a fraud was perpetuated because the party himself had first raised the subject on cross-examination). However, the rule "does not permit the introduction of evidence that is related to a different issue or is irrelevant to the evidence previously

admitted." *Whitworth,* 856 F.2d 1268 at 1285.

 The facts that (1) defense counsel for Yokohama did not object to Plaintiffs' expert testimony, and (2) defense counsel generally alluded to the disputed testimony in his opening statements do not alter our conclusion. While perhaps the lack of objection by defense counsel or an allusion in an opening statement could give a district court a reason to exercise its discretion not to allow curative evidence, the single failure to object does not foreclose, as a matter of law, the district court's use of its broad discretion on questions of evidence. To the contrary, despite other evidentiary malfeasance, the trial court retains its discretion to admit or omit curative testimony, and here, in particular, we conclude that the district court did not abuse its discretion in permitting Yokohama's expert's curative testimony.

Plaintiffs acknowledge that they did not need to prove how the defect developed in order to sustain a products liability claim under a manufacturing defect theory, *see, e.g., Barker v. Lull Eng'g Co.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 236, 573 P.2d 443 (1978), but argue that their expert was justified in providing potential explanations so that the jury would not believe that they were asserting a defect theory "in a vacuum." Although this explanation amply justifies the tactical decision, it does not insulate Plaintiffs from the consequences of that choice. Plaintiffs' expert suggested to the jury that there were many points in the manufacturing process during which a mistake could have been made; Yokohama was entitled to rebut this testimony with evidence suggesting that it was unlikely that such mistakes were made. In admitting this evidence, the district court did not abuse its discretion.

IV

The district court's judgment is affirmed. Each party shall bear its own costs.

**AFFIRMED.**