**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-1289**

NABIL J. ASTERBADI,

Plaintiff - Appellant,

versus

EARL F. LEITESS; LEITESS, LEITESS AND
FREIDBERG, P.C.; THE CIT GROUP/EQUIPMENT
FINANCING, INCORPORATED,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. James C. Cacheris, Senior
District Judge. (CA-04-286-1)

Argued: March 16, 2006               Decided: April 20, 2006

Before MOTZ, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Dale Andrew Cooter, COOTER, MANGOLD, TOMPERT & KARAS,
L.L.P., Washington, D.C., for Appellant. M. Roy Goldberg,
SHEPPARD, MULLIN, RICHTER & HAMPTON, Washington, D.C., for
Appellees. **ON BRIEF:** Greggory B. Mendenhall, Christopher M.
Loveland, SHEPPARD, MULLIN, RICHTER & HAMPTON, Washington, D.C.,
for Appellees.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

On March 17, 2004, Nabil Asterbadi initiated this civil action in the Eastern District of Virginia against The CIT Group/Equipment Financing, Inc. ("CIT"), Earl Leitess, and the law firm of Leitess, Leitess, and Freidberg, P.C. (collectively, the "Defendants"). Among Asterbadi's claims was one made under Federal Rule of Civil Procedure 60(b), seeking, inter alia, equitable relief from a default judgment CIT had obtained against him more than ten years earlier in that court (the "1993 Judgment"). On July 2, 2004, the district court dismissed part of Asterbadi's complaint in the present civil action as barred by the statute of limitations, but authorized Asterbadi to pursue his equitable relief claim and struck his demand for a jury trial. On November 12, 2004, the Defendants sought summary judgment on the equitable relief claim, which was granted by the court's Order of March 1, 2005. See Asterbadi v. Leitess, No. CA-04-286-1 (E.D. Va. Mar. 1, 2005). Asterbadi has appealed the summary judgment order and, as explained below, we affirm.

I.

The background of this dispute is summarized as follows. In 1991, Washington Capital Aviation & Leasing, Inc. ("WCAL") purchased a Westwind II Jet aircraft for the sum of $2,262,000. The purchase of the aircraft was financed by a loan from CIT, and

2

CIT obtained, in connection therewith, a security interest in the plane.  At the time of the loan transaction, Asterbadi was WCAL's sole stockholder, and he executed the promissory note to CIT as the guarantor on CIT's loan to WCAL.  Thereafter, on February 12, 1993, WCAL filed for Chapter 11 bankruptcy in the Eastern District of Virginia.  Leitess, who is being sued in this case, represented CIT in the bankruptcy proceedings, where CIT was a primary secured creditor.  In that capacity, Leitess dealt with Joseph Manson, WCAL's bankruptcy lawyer, who was assisting (but not representing) Asterbadi in connection with CIT's efforts to resolve Asterbadi's guaranty obligation for the debt owing to CIT by WCAL.

On July 7, 1993, CIT filed a "Verified Complaint for Money Owed" (the "1993 Complaint") in the Eastern District of Virginia, suing Asterbadi on his guaranty obligation.  At that time, the aircraft was already under contract to be sold for the sum of $1,800,000.  The 1993 Complaint was filed on behalf of CIT by attorneys Christopher Moffitt and Randolph Knepper, and sought damages from Asterbadi in the sum of $2,286,009.97 (the $2,184,950 balance on the CIT loan, plus interest and late fees to the date suit was instituted), as well as additional interest and attorneys' fees.  On July 20, 1993, the sales transaction relating to the aircraft was consummated.  The Aircraft Bill of Sale in connection

therewith, dated July 20, 1993, was signed by Asterbadi.[1] According to CIT, it received gross proceeds of $1,825,000 from the July 20, 1993 sale of the aircraft, and it incurred $125,672.04 in sales expenses, for a net of $1,699,327.96. The net proceeds to CIT were thus $586,682.01 less than the sum it sought from Asterbadi in the 1993 Complaint.

Asterbadi admits that he was served with the 1993 Complaint, and that he nonetheless failed to respond to it. On August 30, 1993, Moffitt, at Leitess's direction, filed a motion for default judgment against Asterbadi on the 1993 Complaint, and failed to inform the district court that the aircraft had been sold. The court entered the 1993 Judgment on October 4, 1993, awarding CIT $2,286,009.97 in damages, plus interest and attorneys' fees in the sum of $347,742.50. If the plane's sale had been taken into account, CIT would have been awarded $586,682.01 in damages — $1,699,327.96 less than those awarded in the 1993 Judgment.

CIT did not thereafter seek to execute on the 1993 Judgment and, on January 4, 1994, it entered into a forbearance agreement with Asterbadi. By the forbearance agreement, CIT reduced the 1993 Judgment to $586,682.01, and it also reduced the interest and

---

[1]Asterbadi asserts that he signed the Bill of Sale "[s]ometime after a bankruptcy court hearing in May 1993," and that he left the date of sale on the Bill of Sale blank. He maintains that he did so because he "understood that CIT needed to have a Bill of Sale to accommodate a future sale of the aircraft, or in the event that CIT retained the aircraft."

attorneys' fees award to $88,002.50. The forbearance agreement provided that, if Asterbadi paid $250,000 in principal to CIT by July 8, 1996, and did not otherwise default, he would "be released from any further payment or other obligation on account of the [1993] Judgment." That same day, Leitess sent a letter to Manson, copied to Moffitt, and directed that Moffitt credit the 1993 Judgment to account for the aircraft's sale and reflect the forbearance agreement. On April 11, 1994, Moffitt filed a Notice of Partial Satisfaction with the Clerk in the Eastern District of Virginia, pursuant to Leitess's instructions.

When Asterbadi failed to make the payments agreed upon in the forbearance agreement, CIT made multiple attempts to collect on the 1993 Judgment, filing enforcement actions against him between 1995 and 2003 in New Jersey, Maryland, and the District of Columbia. Although certain of those filings failed to initially reflect that the 1993 Judgment had been reduced, Asterbadi does not dispute that, in all instances, the appropriate courts were informed by CIT of the aircraft sale, the forbearance agreement, and the Notice of Partial Satisfaction.

On March 17, 2004, Asterbadi filed this civil action in the Eastern District of Virginia, asserting, inter alia, his claim for equitable relief from the 1993 Judgment. As noted, on November 12, 2004, the Defendants moved for summary judgment on the equitable relief claim, and their motion was granted by Order of March 1,

2005.  This appeal followed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.


## II.

We review de novo an award of summary judgment, viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party.  Baqir v. Principi, 434 F.3d 733, 741 (4th Cir. 2006).  Summary judgment is not appropriate unless "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'"  Id. (quoting Fed. R. Civ. P. 56(c)) (alteration and internal quotation marks omitted). Whether to accord equitable relief from a final judgment, however, is an issue committed to the sound discretion of the district court.  See Browder v. Dir., Dep't of Corrections of Ill., 434 U.S. 257, 263 n.7 (1978).


## III.

Asterbadi contended in the district court that CIT, in securing the 1993 Judgment against him, perpetrated a fraud.  He maintained that the fraud emanated from CIT's failure to disclose that the aircraft had been sold, thereby denying Asterbadi an opportunity to determine whether the sale was a commercially

6

reasonable transaction under Virginia's Uniform Commercial Code (the "UCC"), and prejudicing his right under the UCC "to recover [from CIT] any loss caused by a failure to comply with" the UCC's provisions.  See Va. Code. Ann. § 8.9-507(1) (1993) (repealed 2001).  In other words, Asterbadi asserted that CIT devalued the plane by selling it improperly, and then, in securing the 1993 Judgment, fraudulently failed to disclose the sale to the court, not to avoid crediting the 1993 Judgment for the sale, but so that the credit would be for the deflated sales price.

Rule 60(b), which generally vests a district court with authority to grant relief from final judgments, provides that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, . . . or to set aside a judgment for fraud upon the court."[2] Asterbadi asserts that he is entitled to equitable relief from the 1993 Judgment under both a fraud on the court theory, and through an independent action in equity.

The doctrine of fraud on the court is a principle to be narrowly construed and applied, and it embraces "only that species of fraud which does or attempts to, defile the court itself, or is

---

[2]Although Rule 60(b)(3) allows a party to obtain relief from a judgment on the basis of "fraud . . . , misrepresentation, or other misconduct of an adverse party," a motion under Rule 60(b)(3) must be made "not more than one year after the judgment."  Because Asterbadi filed this civil action in March 2004 — more than ten years after the 1993 Judgment was entered — he cannot rely on Rule 60(b)(3) to obtain relief from the 1993 Judgment.

a fraud perpetrated by officers of the court <u>so that the judicial machinery can not perform in the usual manner</u> its impartial task of adjudging cases that are presented for adjudication," such as a lawyer's subornation of perjury.  <u>See</u> <u>Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters</u>, 675 F.2d 1349, 1356 (4th Cir. 1982) (emphasis added and internal quotation marks omitted).  A party asserting fraud on the court must establish that the conduct complained of was part of "a deliberate scheme to directly subvert the judicial process."  <u>Id.</u>

In awarding summary judgment against Asterbadi, the district court did not specifically address whether the 1993 Judgment was obtained through a fraud on the court.[3]  Viewing the facts of this case in the light most favorable to Asterbadi, however, it would not have been within the court's discretion to grant relief under a fraud on the court theory.  The Defendants' failure to advise the court, prior to securing entry of the 1993 Judgment, that the aircraft had been sold, when considered in light of the Defendants' subsequent actions (entering into the forbearance agreement and filing the Notice of Partial Satisfaction), simply does not constitute the egregious conduct essential to a fraud on the court.  Moreover, the Defendants' actions cannot be seen as hindering the

_____

[3]The Defendants maintain on appeal that the district court failed to specifically address the fraud on the court theory because Asterbadi never asserted it there.  As Asterbadi's claim of fraud on the court is meritless, we need not address whether he properly presented that theory to the district court.

court's ability to perform its impartial adjudicatory function. See Great Coastal, 675 F.2d at 1356-57.

In the end, the Defendants took the steps necessary to appropriately reduce the 1993 Judgment. No court could reasonably conclude that the Defendants, in obtaining and then reducing the 1993 Judgment, carried out "a deliberate scheme to directly subvert the judicial process." Although the court should have been notified that the aircraft had been sold, the actions apparent from this record plainly did not perpetrate a fraud on the court in connection with the 1993 Judgment.

Finally, in order to sustain an independent action in equity, Asterbadi must establish the five factors set forth in Great Coastal: (1) that the 1993 Judgment ought not, "in equity and good conscience," be enforced; (2) that he had "a good defense to the alleged cause of action" underlying the 1993 Judgment; (3) that "fraud, accident, or mistake" prevented him from obtaining the benefit of his defense; (4) "the absence of fault or negligence" on his part; and (5) "the absence of any adequate remedy at law." See 675 F.2d at 1358 (internal quotation marks omitted). By his own admission, Asterbadi failed to respond to the 1993 Complaint, even though he was properly served with it. Accordingly, even if he could meet the balance of the test, Asterbadi is entirely unable to satisfy the fourth Great Coastal factor, in that he cannot show "the absence of fault or negligence" on his part, see id., and he

9

thus cannot maintain an independent action in equity.  In these circumstances, the district court did not abuse its discretion when it denied Asterbadi's claim for equitable relief from the 1993 Judgment.

IV.

Pursuant to the foregoing, we affirm the award of summary judgment made to the Defendants on Asterbadi's claim for equitable relief from the 1993 Judgment.

AFFIRMED